**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Carl IRON SHELL, Jr., Defendant and Appellant.**

**No. 13959.**

Supreme Court of South Dakota.

Argued April 20, 1983.

Decided July 13, 1983.

co-defendant at trial. The passerby, after determining that Theresa Iron Shell was dead, summoned authorities to the scene.

When the authorities arrived to investigate, they found appellant in a stupor. He was unable to talk comprehensibly, answer questions, or move without assistance. Appellant was later examined and was found to have a sore and scraped wrist, a red and swollen knuckle on his right hand and a puffed lip. It was also determined that blood stains found on appellant's parka and blue jeans matched decedent's blood type. The uncle was also found to be quite intoxicated, registering a .13 alcohol blood level.

An autopsy of decedent revealed that she had a .20 blood alcohol level. She had been struck between thirty-five to forty times. The blows were inflicted to the head, the abdomen, to her arms and legs and to her back. Medical testimony established the blows to decedent's chest and abdomen, which fractured twelve of her twenty-four ribs, were the cause of death. It was estimated that she had been dead eight to ten hours prior to being discovered.

Both appellant and the uncle were charged with murder in the second degree. That charge was subsequently changed to murder in the first degree. The two were tried jointly and the jury found appellant guilty of second-degree murder pursuant to SDCL 22–16–7 and acquitted the uncle. Appellant now asks us to review his conviction.

Grant E. Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Albert Steven Fox of Larson, Sundall, Larson & Schaub, Chamberlain, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment of conviction for murder in the second degree pursuant to SDCL 22–16–7. We affirm.

On October 24, 1981, a passerby stopped to give assistance to a vehicle that appeared to be stalled alongside a country road. In the front seat was Theresa Iron Shell (decedent) and the decedent's husband, Carl Iron Shell, Jr. (appellant). In the back seat of the car was Nelson Iron Shell, an uncle and

■ Appellant first contends the trial court erred in denying his motion for separate trials. SDCL 23A–11–2 * provides for severance of trials in certain situations. The determination of whether to grant separate trials is, however, left to the discretion of the trial court and that decision will not be disturbed on appeal absent a show-

---

* SDCL 23A–11–2 provides:

   If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or

provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecuting attorney to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

ing of abuse of discretion. *State v. Reiman,* 284 N.W.2d 860 (S.D.1979); *State v. Bonrud,* 246 N.W.2d 790 (S.D.1976).

■ Appellant alleges prejudice because separate trials would allegedly result in the use of certain exculpatory statements made by the uncle which would be beneficial to appellant's cause. The statements by the uncle included a denial of wrongdoing by either the uncle or appellant. Appellant also contends a separate trial would permit the introduction of evidence of prior abuse by the uncle of his spouse. As to the first item, the exculpatory statements denying involvement in the death were introduced at trial in the form of testimony by a police officer. Separate trials would provide nothing more in the way of exculpatory statements by the uncle than had already been introduced at trial. The uncle's alleged abuse of his spouse could have been introduced at trial below. The opportunity to introduce this evidence at a separate trial does not deny the fact that the same opportunity was available here. Because we see no other particularized showing of prejudice in the present case, we are compelled to conclude that the trial court did not abuse its discretion and error was not committed when severance was not granted.

■ Appellant next contends the trial court erred in admitting certain medical records. These records were of documented instances of physical abuse occurring over a period of time. The records show the decedent identified appellant as the attacker in each of the incidents. At trial, appellant objected, alleging certain records were remote in time and that decedent was not reliable. Appellant asserts decedent's tendency to drink and fight make it just as likely that injuries were inflicted by others, possibly even other relatives. The trial court concluded the records' probative value outweighed the danger of unfair prejudice and admitted those portions of the records identifying appellant as the assailant. The trial court thereby admitted records which identified appellant as the perpetrator in beatings occurring in May, June and December of 1968, October of 1969, August

and September of 1973, and in December of 1980.

Appellant's objection to the medical records went to the relevancy of the evidence and to the remoteness of some of the records. As to the age of the documents, even if the old records were ruled inadmissible, the more recent evidence of abuse would still be admissible. Thus, the evidence is, at worst, cumulative and not prejudicial error. Turning to relevancy, we need look no further than our recent opinion in *State v. Johnson,* 316 N.W.2d 652, 654 (S.D.1982). There, we said:

> Evidence of other offenses is relevant if it tends to make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1. Any fact that tends to connect an accused with the commission of a crime is relevant and has probative value. *State v. O'Connor,* 84 S.D. 415, 420, 172 N.W.2d 724, 727 (1969).

We find it difficult to conceive of a situation in which evidence of this nature would be more relevant than the case at hand. Here, two individuals were found with decedent. Medical testimony established blows to the abdomen and chest were the cause of death. Since neither party confessed, accused the other, or offered credible alternative theories as to the identity of the killer, the jury needed any information available to ascertain the party responsible for the death. The pattern of physical abuse by appellant upon decedent was highly relevant in helping the jury identify the killer.

■ Assuming for the moment that the evidence was probative, we must determine if its probative value resulted in unfair prejudice. SDCL 19–12–2 and SDCL 19–12–3. We will not overrule such a ruling by the trial court unless there is a clear abuse of discretion. *State v. Houghton,* 272 N.W.2d 788 (S.D.1978). While there is no question that this evidence adversely affected appellant's case, it is not, in our view, unfair prejudice. Wright & Graham,

in discussing Rule 403 (SDCL 19–12–3) state that " 'prejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." 22 C. Wright & K. Graham, Federal Practice & Procedure § 5215 at pp. 274–75 (1978) (Fed.R.Evid. 403). The history of spouse abuse demonstrated in these medical records has an adverse effect on appellant's case, but most evidence offered by the State would have this effect. The prior abuse is not some collateral matter admitted for the purpose of prejudice. Instead, it is directly related to a vital issue in the crime charged and we cannot find that the trial court abused its discretion in admitting this evidence. Appellant's hearsay objection raised in his brief and at oral argument was not preserved for appeal since it was not specifically objected to at trial. *State v. Helmer,* 278 N.W.2d 808 (S.D.1979).

█ Appellant next contends the trial court erred in instructing on second-degree murder when the information and complaint were filed under SDCL 22–16–4, murder in the first degree. Appellant cites *State v. Lohnes,* 324 N.W.2d 409 (S.D.1982), for the proposition that the accused's right to know the nature and cause of the accusation against him precludes the use of a jury instruction on second-degree murder when he was charged with first-degree murder.

After reviewing appellant's argument, we must conclude it to be without merit. In *Lohnes, supra,* there was an objection to the jury instruction. Here, appellant failed to preserve the issue for appeal when he failed to object to the proposed instruction. *State v. White Mountain,* 332 N.W.2d 726 (S.D.1983); *State v. Reiman,* 284 N.W.2d 860 (S.D.1979).

█ After reviewing the record, we must also conclude that it was not plain error to instruct on second-degree murder in this case. Although appellant does not raise the plain error rule as a basis for appeal in his brief, we will examine whether it is applicable to this issue. We have said that the plain error rule, which has its basis in SDCL 23A–44–15, must be applied cautiously and only in exceptional circumstances. *White Mountain, supra; State v. Brammer,* 304 N.W.2d 111 (S.D.1981). Several factors distinguish this case from *Lohnes.* First, this case was tried before our decision in *Lohnes* was released. Counsel cannot be presumed to know the rulings of this court prior to their release. Second, while *Lohnes* took pains to note the offense of second-degree murder was "an offense that he [Lohnes] had never been charged with," the same cannot be said in the case at hand. Here, appellant had originally been charged with second-degree murder. For appellant to assert he did not know the specific allegations against him in the second-degree murder charge is to ignore the facts at bar. Given these factors and the less than unanimous acceptance of the *Lohnes* holding by this court, we must conclude this is not one of the exceptional circumstances in which the plain error rule should be invoked.

█ Finally, appellant asserts he was denied effective assistance of counsel. Appellant points to a series of acts which he alleges support his contention. We have said in the past that post-conviction relief is the normal procedure by which this issue is raised. *State v. Phipps,* 318 N.W.2d 128 (S.D.1982); *State v. McBride,* 296 N.W.2d 551 (S.D.1980). We see no reason to vary from this position at this time. Thus, we decline to review appellant's contention. Our ruling leaves open a post-conviction relief action to appellant should he decide to pursue it.

The judgment of conviction is affirmed.

FOSHEIM, C.J., and MORGAN, J., concur.

WOLLMAN and HENDERSON, JJ., dissent.

HENDERSON, Justice (dissenting).

### PALED PROBATIVE FORCE

Two statutes which stem from this Court's adopted rules of evidence are cen-

tral to an analysis of the admissibility of the medical records dating from 1968, 1969, 1973, and 1980. SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

And SDCL 19–12–3 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In addition, we have adopted the federal requirement that the prior crimes, wrongs, or acts must have occurred close in time to the act at bar. *State v. Pedde,* 334 N.W.2d 41 (S.D.1983); *State v. Johnson,* 316 N.W.2d 652 (S.D.1982).

A particularly clairvoyant application of the above legal requirements is provided in *United States v. Two Eagle,* 633 F.2d 93 (8th Cir.1980), and my analysis is grounded therein. Initially, we start with the foundational rule that the prior medical records are not admissible to prove Carl Iron Shell, Jr.'s character as a violent person in order to show he acted in conformity therewith on October 24, 1981, when Theresa Iron Shell was beaten to death. SDCL 19–12–4; SDCL 19–12–5. An exception to this rule is that the prior medical records are potentially admissible to show Carl Iron Shell, Jr.'s motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. SDCL 19–12–5. Of course, one of the delineated exceptions must be a material issue raised at trial. *Two Eagle,* 633 F.2d at 96. Here, the majority opinion asserts that the identity of Theresa Iron Shell's assailant was at issue.

The next analytical juncture is that the medical records must be relevant to the issue of identity. *State v. Johnson,* 316

N.W.2d at 654. As the majority opinion notes, the relevancy hurdle is not particularly difficult in criminal cases. Unfortunately, the majority opinion neglects the import of the next analytical step which is that the prior medical records must be close in time to the act at bar. *Pedde,* 334 N.W.2d 41. I have considerable trepidation with the majority opinion's treatment of this issue as embodied in this passage: "As to the age of the documents, even if the old records were ruled inadmissible, the more recent evidence of abuse would still be admissible. Thus, the evidence is, at worst, cumulative and not prejudicial error."

Medical records of incidents dating back to the late 1960s, aged respectively 13 years, 12 years, and 8 years, simply fail to make reliable, trustworthy, and cogent evidence. Indeed, in a distinct, yet conceptually related area, this Court has judicially adopted that as a general rule of evidence, convictions of prior serious crimes are not admissible to attack a witness' credibility if the crime or sentence is aged over 10 years. SDCL 19–14–13. The majority opinion seems to concede, or wants to concede, that the antiquated medical records were inadmissible. Yet, with a truncated analysis, the majority opinion labels the medical records "cumulative and not prejudicial error." I question this approach as it short-circuits the close-in-time requirement and destroys the integrity of our analytical framework.

Labeling these dated medical records "cumulative" is a misnomer. These records dredged up from other decades do not replicate the December 1980 medical records. Rather, the aged medical records serve to taint and prejudice the proceedings by implanting in the jurors' minds an inflammatory chain of events from the distant past. Events of which the jurors knew precious little. Events stored for so long that they necessarily were riddled with unanswerable questions and speculation. Events whose probative force has paled.

This presents the final analytical step: a determination if the probative value of the medical records is substantially outweighed by unfair prejudice. SDCL 19–12–3. As

the majority opinion recognizes: "[T]here is no question that this evidence adversely affected appellant's case . . . ." However, the majority concludes the evidence was not prejudicial because:

" 'prejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means."

What more illegitimate means of persuasion could one find than the introduction into evidence of significantly aged inflammatory evidence to prove the identity of an individual in a crime committed 13 years later? This hardly seems to be the type of evidence which we associate with the idea of "legitimate probative force." Is not the real message from this stale evidence exactly the one prohibited by SDCL 19–12–4 and SDCL 19–12–5: "Once a spouse abuser, always a spouse abuser." No, you cannot prove a person's bad character to show he acted in conformity therewith on the occasion in question. Therein lie the gravamen of evidentiary error.

## PREJUDICIAL JOINDER

Trial counsel for appellant filed a three-page Affidavit and Brief in Support of Separate Trial. A motion that appellant and his codefendant be tried separately was denied by the trial court. It was reversible error for the trial court to deny this motion, as there was prejudicial joinder.

In reading the cases throughout the United States on prejudicial joinder, it appears to me that there is never a good time to assert prejudicial joinder. Asserting it before the trial seems to be speculative. If it is asserted during the trial, it is disruptive. And to advocate it on appeal, begs hindsight which deems the error harmless. However, there can be no doubt that the refusal to grant severance in criminal trials carries substantial risks of manifest unfairness. There was a foreseeable prejudice against this appellant as demonstrated to the trial court by the pretrial showings and evidence. The trial court knew that an out-of-court incriminatory statement was made by appellant's codefendant to a third-party witness and that this third-party witness would testify, namely a police officer.

During a period of approximately 18 hours, at some time in which Theresa Iron Shell died, appellant and his codefendant were the only persons continuously present. The facts revealed that both appellant and codefendant had Type "O" Blood on their clothing. Theresa Iron Shell had Type "O" Blood. The uncle has Type "O" Blood and appellant has Type "A" Blood. The State argues that both appellant and codefendant had not bled. Appellant had blood on his pant legs and parka. Codefendant had blood on his T-shirt and a plaid shirt. Neither appellant nor codefendant testified. Appellant's counsel vigorously urged, before trial, that joinder would be extremely prejudicial, and specifically cited codefendant's felony record for having severely beaten his wife. Appellant's counsel protested to the trial court that there were antagonistic defenses and the interests of his client and codefendant were absolutely conflicting and antagonistic. Notwithstanding, the interests of economy and efficiency were considerations vaulted over the fairness of appellant and codefendant being tried together. The circuit court of the Sixth Judicial Circuit of Bennett County, State of South Dakota, is not a court deluged or swamped with litigation. This author takes judicial notice of the Unified Judicial System records of this state which reflect no felony court trials and two felony jury trials, other than this consolidated trial, in Bennett County for calendar year 1982. The circuit court had the time, court personnel, and the judicial manpower to conduct two trials in the name of fairness to this appellant. Rather, the ruling precipitated antagonistic defenses that could not be properly raised, conflicts in trial strategy which could not be properly advocated, and the preclusion of cross-examination of a codefendant.

The most damning evidence in the trial against appellant came on direct examination of Officer Thomas L. Jensen by State's

Attorney Long. When Officer Jensen was asked what codefendant witnessed, he stated: "Yeah, he indicated to me that he woke up and the car was parked along the roadway and that somebody was hollering, Carl, stop it, Carl, stop it. Then he went back to sleep again." This was an out-of-court inculpatory statement as to appellant, made by his codefendant and related in court by a third-party witness. The prejudicial error of constitutional dimension arose in this case from appellant's inability to cross-examine the declarant (codefendant making the inculpatory statement), when he, the declarant, invokes his Fifth Amendment right to refuse to take the stand. The landmark case in the United States is *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The codefendant did not take the stand. As a result, this appellant was deprived of his Sixth Amendment right to confront his accuser. Yes, his accuser sat at the counsel table with him and he could not ask a question.

The impact of *Bruton,* 391 U.S. 123, was curtailed by *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), and was limited to out-of-court statements not falling within any exception to the hearsay rule for the nondeclarant. It is true, under *Dutton,* that the right of cross-examination is not absolute. Cross-examination is not called for if the following four criteria are met: (1) the declaration contains assertions of past fact; (2) the declarant had presumed knowledge of the identity and role of the participants in the crime; (3) the declarant's recollection was not faulty; and (4) the declarant was not misrepresenting appellant's involvement in the crime.

The trial court knew that the death of Theresa Iron Shell arose in a rural highway setting with the participants deeply intoxicated. The indicia of reliability of codefendant's statement as to what transpired necessarily was clouded by faulty recollection. Therefore, the cross-examination of codefendant, his uncle, was vital to test the strength of his recollection.

Under the facts of this case, the trial court abused its discretion in denying the motion for severance. *State v. Reiman,* 284 N.W.2d 860 (S.D.1979). I would reverse and grant appellant a separate trial.

I am authorized to state that Justice WOLLMAN joins in this dissent.