**Donna Oien JONES, Petitioner and Appellant,**

v.

**STATE of South Dakota, Respondent and Appellee.**

No. 14478.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1984.

Decided Aug. 29, 1984.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for petitioner and appellant.

Mark Smith, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

DUNN, Justice.

This is an appeal from an order denying post-conviction relief. We reverse and remand.

Donna Oien Jones was tried before a jury and found guilty of aiding and abetting in the distribution of LSD. The trial court sentenced Jones to ten years in the state penitentiary and a $10,000 fine. Upon the advice of her attorney, Jones did not directly appeal the conviction to this court. She did, however, prior to the re-

peal of SDCL 23A–34, file a petition for post-conviction relief; the petition alleged inadequate assistance of counsel at her trial. The post-conviction court denied the petition, finding that Jones had waived her right to effective assistance of counsel; as a result of that finding, the court decided not to fully address the question of whether or not defense counsel was competent. A certificate of probable cause that an appealable issue exists was granted by the post-conviction court. On appeal, Jones urges that there is no evidence to support the finding of a waiver of her right to effective assistance of counsel, and that in fact, her counsel was inadequate.

 The Sixth Amendment of the United States Constitution and Article VI, § 7 of the South Dakota Constitution guarantee the right of an accused in a criminal action to have assistance of counsel. This right to counsel means adequate and effective counsel. *State v. McBride*, 296 N.W.2d 551 (S.D.1980). However, constitutional rights, including those in the Bill of Rights, may be waived by a defendant, *State v. Violett*, 79 S.D. 292, 111 N.W.2d 598 (1961), as long as the waiver is made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Accordingly, we recognize that a criminal defendant may waive his right to adequate and effective assistance of counsel, as long as the waiver is made voluntarily, knowingly, and intelligently. *Accord, People v. Johnson*, 75 Ill.2d 180, 25 Ill.Dec. 812, 387 N.E.2d 688 (1979). *See also Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426, 433 n. 5 (1978) (an accused may waive his right to be represented by conflict-free counsel); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir.1978);

*Kabase v. Eighth Judicial Dist. Court*, 96 Nev. 471, 611 P.2d 194 (1980). This court must then determine, after an examination of all the facts and circumstances in the case, whether the trial court erred when it concluded that Jones voluntarily waived her right to effective assistance of counsel.

 A careful examination of the record reveals that there is no real evidence to indicate a knowing and intelligent waiver by Jones of this constitutional right. It is true, as the post-conviction court noted, that the trial judge warned defense counsel that his conduct was close to contempt of court, that his strategy was about to open the door to evidence which was irrelevant and prejudicial to his client, and that he was on "very dangerous grounds." However, all of these warnings took place *outside* the presence of Jones; Jones was never made aware of the trial judge's serious misgivings about her attorney.* It is also true that during the trial a recess was called, at which time Jones was advised of her Fifth Amendment rights and warned of the dangers of taking the stand. But this discussion between Jones and the judge did not involve the issue of competency of counsel; it went solely to her rights concerning self-incrimination. Finally, it is also true that Jones' counsel was retained rather than appointed. But in light of the recent decision in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), we conclude that this factor should have no bearing on the question of waiver. In *Cuyler*, the Supreme Court stated:

> A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience

---

* On this point, the post-conviction court seems to be confused. While the court specifically found that the trial judge's warnings to counsel took place outside the presence of Jones, it also concluded that the trial judge affirmatively in-

formed her of the problems and ramifications of proceeding with challenged counsel. Such a conclusion does not logically follow; neither does it have a basis in the facts.

teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection.

446 U.S. at 344, 100 S.Ct. at 1716, 64 L.Ed.2d at 344.

It is significant that those courts which have dealt with this waiver issue have stressed the importance of the trial judge's active participation in the waiver decision. They state that the judge should inform the defendant of the problems with defense counsel and seek a response from the defendant that he understands his rights and the perils of continuing with the present counsel. · *See, e.g., United States v. Mahar,* 550 F.2d 1005 (5th Cir.1977); *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975); *People v. Johnson, supra.* No such discussion took place here. Jones was *never* informed of the serious problems which the trial judge clearly observed in counsel's handling of the case.

In its decision, the post-conviction court makes much of the fact that Jones made no request for a continuance to get another lawyer and that she participated in the "high risk" defense strategy. But how can a defendant, a non-lawyer who has not been informed of the problems in the handling of the case, be expected to evaluate the available alternatives and make decisions regarding motions and trial tactics? Without being informed of the problems in the case, a defendant simply cannot become aware of the likely consequences of continuing with the present counsel, and therefore, cannot make an intelligent waiver of constitutional rights. It is abundantly clear from the record that Jones did not knowingly or intelligently waive her right to effective assistance of counsel in the trial below.

■ The next issue is whether Jones was in fact provided effective assistance of counsel. When reviewing such claims in the past, this court has used the following standard: 1) an attorney is presumed competent; and 2) the party alleging incompetence has a heavy burden in establishing ineffective assistance of counsel. *Jibben v. State,* 343 N.W.2d 788 (S.D.1984); *Grooms v. State,* 320 N.W.2d 149 (S.D.1982). This court's function is not to second-guess the tactical decisions of the trial attorney, nor will we substitute our own theoretical judgment for that of defense counsel; but this court should not hesitate to reverse a conviction if the record reveals that a defendant was not afforded effective assistance of counsel. *Grooms v. State, supra.*

■ While this has been our standard, we must also take note of the very recent case of *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court for the first time dealt with a general claim of ineffective assistance of counsel. In *Strickland,* the Court reiterated its position that the 6th Amendment right to counsel means the right to effective assistance of counsel. The Court also stated the following general principles to be applied in such cases. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. To reverse a conviction on ineffective assistance grounds, a defendant must show: 1) that counsel's performance was deficient; and 2) that the deficient performance prejudiced the defense. The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In making these evaluations, the proper standard for attorney performance is that of "reasonably effective assistance." Counsel is strongly presumed to have rendered adequate assistance, and a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

This new Supreme Court ruling is in accord with numerous points in our long-held

position, while at the same time it is less restrictive than our prior standard. In reviewing this case, we shall examine the facts under both the old and new standards. However, before we consider this issue, we must deal with the post-conviction court's decision not to enter findings and conclusions on the competency question since it found a waiver of rights. Normally, this would require us to remand the case for specific findings on the issue. But despite its statements to the contrary, the court did in fact make a ruling on the competency of defense counsel when it concluded that "trial counsel intentionally persuaded Defendant not to exercise her rights of appeal in order to avoid damage to his reputation. Therefore, she did not knowingly and intelligently waive her right to appeal her conviction to the Supreme Court." In *Grooms v. State, supra,* we held that failure to appeal within the prescribed time cannot be viewed as a strategic move on the part of an attorney; such failure is strong evidence of a failure to protect the interests of the defendant. 320 N.W.2d at 152. Here, we have an analogous, and perhaps more serious situation: no appeal was ever taken because defense counsel persuaded Jones that an appeal would be a "waste of time"; counsel did this, not because he was convinced an appeal would be futile, but because he was worried about his own reputation. This strong evidence of incompetence was noted by the post-conviction court in its findings and conclusions, thus making competency of counsel a reviewable issue.

■ In examining the competency question, the following circumstances are apparent in the record. First, prior to and during the trial, defense counsel was in much pain as a result of his involvement in several accidents. Two weeks prior to the trial he spent the entire week in bed because of his condition. The week before trial he was able to spend only half time at his office and was on medication for pain and sleeplessness. Counsel admitted at the post-conviction hearing that during trial he was in "extreme discomfort," which affected both his concentration and stamina. Despite this problem, he did not ask for a continuance.

Second, counsel's physical problems contributed to a general lack of preparation for the trial. On several occasions during trial, the court rebuked counsel when it was apparent that he had not reviewed materials until the day of the trial. An example of this lack of preparation occurred when counsel, on the evening before the trial, submitted a motion to suppress the State's key evidence. This evidence was a tape recording of a telephone conversation in which Jones allegedly told a drug agent the telephone number of a drug dealer from whom LSD could be obtained. The suppression motion was properly denied as being untimely since the trial date had been set for a month.

Third, when this key evidence was introduced at trial by the State, defense counsel failed to object at all. This failure is inexplicable since the tape was the only evidence presented by the State connecting Jones to the crime, and since serious questions existed concerning the identity of the person to whom the agent was talking.

Fourth, defense counsel used a "high risk" strategy, even after the trial court warned him that doing so placed him "in very dangerous grounds." This strategy supposedly was intended to show that Jones misunderstood the drug agent during the telephone call; however, the result of the strategy was to allow an incredible amount of prejudicial testimony to be offered. For example, the defense brought forth in its own case the fact that Jones had earlier been convicted of selling LSD and that Jones' daughter had been involved in drug sales. The defense called to the stand an admitted drug dealer, the person convicted of the principal offense for which Jones was charged with aiding and abetting, to recite the facts of the crime and to state that he knows Jones. The defense also elicited testimony from the roommate of the drug dealer, who promptly identified the voice on the tape as belonging to Jones.

It is difficult to perceive how all of these facts could have been part of any legitimate defense strategy. They are indicative of an attorney who was unprepared and did not consider the ramifications of his "strategy." As a result, Jones suffered actual prejudice at the trial; furthermore, Jones was prejudiced when no appeal was taken due to counsel's concern for his own reputation. Under such circumstances, we conclude that counsel failed to provide "reasonably effective assistance"; his actions clearly undermined the proper functioning of the adversarial process. Therefore, Jones was denied adequate and effective assistance of counsel. This result would be the same under either our old standard or the new Supreme Court standard.

We reverse and remand for a new trial.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurring in result.

HENDERSON, Justice (concurring in result).

Initially, I wish to express my disturbance at the decision's failure to set forth the most cardinal rule of all, that findings of fact and conclusions of law by the post-conviction court must be found to be "clearly erroneous." *Gregory v. State*, 325 N.W.2d 297 (S.D.1982).

I believe that post-conviction relief was improperly denied below. The post-conviction court's conclusion that appellant did not knowingly, intelligently, and voluntarily waive the right to appeal her conviction was not clearly erroneous. She had a right to appeal her conviction under SDCL 23A–32–2. Trial counsel persuaded appellant not to appeal her conviction knowing the defense efforts were below par and would be detailed and revealed in an appellate tribunal. Acting thereupon, she did not appeal. Without question, this advice constituted ineffective assistance of counsel. This advice, I wish to emphasize, was post-trial advice and post-trial reflection by trial counsel. Post-conviction relief should be granted based upon this singular occur-

rence. *Grooms v. State*, 320 N.W.2d 149 (S.D.1982).

However, I disapprove of the trial court permitting this young lawyer to go to trial. The trial court was well aware of his terrible health problems. Yet, the trial court set the case for trial. Improvidently, the young lawyer made no motion for a continuance.

Further, I am of the opinion that appellant waived her right to effective assistance of counsel. A defendant can waive the right to effective assistance of counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). I would affirm the post-conviction court's conclusion that "[appellant] knowingly, intelligently and voluntarily made the decision to proceed with the challenged counsel subsequent to the trial judge affirmatively informing her of the potential problems and ramifications." I cannot hold that this was clearly erroneous.

As the post-conviction court found, appellant was advised of all her constitutional rights. She was advised of her right not to testify. She indicated to the trial judge that she understood her rights and the ramifications of what was about to occur and she was prepared to proceed with the trial.

.Additionally, appellant knew of her young lawyer's vast medical problems. These included hospitalization before the trial, an accident on the way to a physical therapy session, a neck and back brace, and pain killers (medicants) right up to trial. Under oath, long after trial, she stated that the young lawyer actually was under heavy medication during the trial. Knowing this, why did she permit her young lawyer to proceed with a jury trial? As the post-conviction court found, she was concerned, yet did nothing to bring her concerns to anyone's attention. She made no request for a continuance or for time to employ a new lawyer. I also note that trial counsel not only represented the appellant in this trial, but he also represented her in a previous criminal case involving the distribution of controlled substances. *See State v. Oien*,

302 N.W.2d 807 (S.D.1981), wherein this appellant received a penitentiary sentence, affirmed on appeal—the penitentiary sentence in this case to be served concurrently therewith. The defense presented in this case was very similar to the defense presented in appellant's first criminal proceeding. The point is: appellant knew or should have known of the trial capabilities of defense counsel. This is exactly the finding the post-conviction court made per Finding of Fact III. Nevertheless, counsel was ill when he defended this case. There are two affidavits in the post-conviction relief proceedings reflecting appellant's concern about the ability of her attorney before the jury trial began. One can only speculate why she did not address these concerns to the trial court either prior to or during the jury trial. Although I join my brothers in reversing and awarding a new jury trial because of the advice against taking an appeal, I am convinced that appellant willingly participated in a "high risk defense" and did not complain about her representation until she was found guilty and sentenced to the state penitentiary.

It strikes me that some good judgment and common sense could have averted this expensive trial for the taxpayers, a retrial of this case, and all of the resultant misery and sorrow caused by proceeding with a jury trial, when some understanding would have demanded a continuance until the young lawyer was on his feet to such extent that he could be fully effective. Constitutionally, the system of criminal justice is based upon an accused securing a fair trial, U.S. Const. art. VI. This appellant did not get a fair trial because she had a lawyer who was defending his client while in physical pain. Defense counsel was in the hospital on August 20–29; he was the victim of a rear-end collision on November 2; he was bedridden from November 2–9; he was on heavy medication from November 10–17. The trial took place on November 17–18.

The State urges in its brief that inasmuch as the trial court concluded that appellant "did not knowingly and intelligently waive her right to appeal her conviction to the Supreme Court, that the matter be remanded to the circuit court for resentencing." SDCL 23A–34–19 suggests that this could be done. I have anguished over this possibility, but am troubled that the record is fraught with errors which precluded appellant's securing a fair trial. Thus, I would join my colleagues that this case be retried, rather than the accused simply be resentenced so that the fairness issue arising in this trial would be foreclosed.