STATE of South Dakota, Plaintiff and Appellee,

v.

Arnold C. DORNBUSCH, Jr., Defendant and Appellant.

No. 14944.

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1986.

Decided April 2, 1986.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard J. Neill, of Foley & Neill, Watertown, for defendant and appellant.

WUEST, Justice.

This is an appeal from a judgment of conviction following a guilty verdict of second-degree burglary, under SDCL 22–32–3. We reverse and remand for a new trial.

Roger Heathcote (Heathcote) owns and operates Powell's Gas and Grocery (Powell's) in Watertown, South Dakota. Heathcote has employed Pat Good (Good) for ten years and Steve Olson (Olson) for four years, both on a part-time basis. He considers them trustworthy. On Sunday, October 14, 1984, Good ran the station from 11:00 a.m. until 7:00 p.m. when Heathcote returned from visiting family members, at which time Good went home. Sometime shortly thereafter, Olson stopped by to purchase some groceries. Heathcote asked Olson to remain and wait on customers while he did some bookkeeping in the back room. During this time, Orien Egersett (Egersett), a regular customer, stopped to buy a gallon of milk. Egersett testified that he watched Heathcote place a stack of twenty-dollar bills in the till before his purchase was rung up by Olson. At approximately 7:30 p.m., two cars stopped at the station's gas pumps. While Olson and Egersett left for their respective homes, Heathcote went out to wait on the customers. Arnold C. Dornbusch, Jr. (appellant) got out of one of the vehicles and told Heathcote that he was only there to buy a bottle of soda pop. Appellant entered the station while Heathcote attended to the other customer. Heathcote testified that between one and three minutes after appellant entered the station, Good returned with an air tank. Heathcote made a mental note of appellant's license number. Appellant purchased a bottle of pop from Good and left the station just as Heathcote entered and said to Good, "I think we've been ripped off."

Heathcote opened the till to deposit money received from the other customer and found that all but two of the twenty-dollar bills he placed there earlier were missing, at which time he called the Watertown Police Department and gave them appellant's license number. It was later determined that the till was short by $168.75. An examination of the cash register tape revealed that a "no sale" was recorded between the sale of milk to Egersett and appellant's purchase of the soda pop, indicating that the till had been opened between those transactions. The next morning, appellant was arrested pursuant to a warrant and charged with second-degree burglary when he appeared at the Codington County Detention Center for an appointment with his parole officer.

Appellant was questioned by Watertown Police Detective Dennis Koch. He was given the standard *Miranda* warnings and stated that he understood his rights therein. He admitted being at Powell's on the previous evening but denied taking any money. Detective Koch asked appellant to take a polygraph exam and he refused. In the course of the interview, appellant said he would agree to pay the amount allegedly taken from Powell's even though he denied taking it, if he would be exonerated. Detective Koch testified he told appellant he did not want him to pay the amount unless he had taken the money, and any arrangement was a decision for the Codington County State's Attorney. When informed of appellant's offer, the state's attorney rejected it.

On November 6, 1984, a preliminary hearing was held in the matter and appellant was bound over for trial. On February 7, 1985, a Codington County jury found appellant guilty of second-degree burglary. On April 1, 1985, he was sentenced to ten years in the South Dakota State Penitentiary. Appellant appeals, contending: (1) the trial court erred in admitting his offer to pay the amount taken from Powell's in exchange for exoneration of the charge, and holding that SDCL 19–12–12 did not apply to the offer; (2) he is entitled to a reversal of his conviction because the State elicited testimony that he refused to take a lie detector test; and (3) he was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article VI, § 7 of the South Dakota Constitution.

■ Prior to trial, appellant made a motion in limine to prohibit the State, under SDCL 19–12–12, from introducing evidence of his offer to pay the amount stolen from Powell's in exchange for exoneration. A two-page report prepared by Detective Koch was received in evidence for the court's consideration in ruling on the motion.[1] After considering the report, the trial court held SDCL 19–12–12 inapplicable to appellant's offer. We agree.

SDCL 19–12–12 states, in pertinent part:

Except as otherwise provided in this section, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer....

The statute is taken verbatim from the December 1975 version of Rule 410 of the Federal Rules of Evidence, entitled "Inadmissibility of Pleas, Plea Discussions, and Related Statements." Under this rule, "[o]ffers to plead guilty and nolo contendere, and statements connected with and relevant to such pleas and offers ... are excludable in the interest of protecting the plea bargaining process, which is deemed essential, given the severe limits upon the resources now expended in the administration of criminal justice." Louisell & Mueller, Federal Evidence (1985 ed.) § 184 p. 505.

Appellant argues that his offer to pay the amount stolen from Powell's constituted an offer to plead guilty. In *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir.1978), the court developed a two-ti-

1. The pertinent portion of Detective Koch's report states:

"[Defendant] wanted to know what would happen if he went out and paid the money back to this individual even though he didn't steal it. I told him I would not want him to do that unless he actually did steal it. He said he didn't. He said he would just as soon pay [Heathcote] back and forget this whole mess. He wanted to know if this could be worked out. I told him at this point that it was not up to me. It was up to the States Attorney and to the complainant[.] He wanted to know if I would ask the States Attorney. I told him I would do so.... 10–16–84 this writer landlined the STATES ATTORNEY and informed him that [Defendant] denied having any knowledge of stealing the money but did make the suggestion that he would just as soon pay the money even though he didn't steal it just to get the whole mess cleared up. [The Codington County State's Attorney] said no deal."

ered analysis to determine the merits of such contentions. "[F]irst, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonably given the totality of the objective circumstances." *See also United States v. O'Brien*, 618 F.2d 1234 (7th Cir.), *cert. denied*, 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); *United States v. Pantohan*, 602 F.2d 855 (9th Cir.1979).

In *Robertson, supra,* the defendant claimed that admissions he and his confederate made to DEA agents who arrested them and their women friends in a parking lot were plea negotiations within the meaning of Federal Rule 410. Applying the test to the record, the court found that neither the defendant nor his confederate expressly offered to plead guilty in exchange for a government concession. Rather, the court found they were concerned only with the release of the women. They did not offer to plead guilty or even contemplate pleading guilty. Consequently, the court held:

> Statements such as these, made in the absence of plea negotiations, are reliable, probative and constitutionally admissible for the jury's consideration. That their cooperation was prompted by a desire to exculpate the women does not transform their admissions into plea negotiations.
> . . . .
> There is simply no indication in this record that Robertson and Butigan were negotiating a plea agreement. . . .

582 F.2d at 1370.

In the present case, appellant's subjective intent is clear from the record. While steadfastly maintaining his innocence, he offered to pay the amount stolen in exchange for exoneration of the burglary charge. He neither offered to plead guilty nor did the State offer him any concessions

in exchange for a guilty plea. "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.*, a willingness by defendant to enter a plea of guilty in return for concessions by the State." *People v. Friedman*, 79 Ill.2d 341, 353, 38 Ill.Dec. 141, 148, 403 N.E.2d 229, 236 (1980); *see also United States v. Jimenez-Diaz*, 659 F.2d 562, 563 (5th Cir.1981); *State v. Taylor*, 336 N.W.2d 721 (Iowa 1983). Although appellant contends that his offer should be held to fall within the parameters of SDCL 19–12–12, we do not believe such a holding would further the ends of justice or protect the plea bargaining process. Accordingly, we affirm the trial court's decision on this issue.

At trial, during cross-examination of Detective Koch, appellant's trial counsel elicited testimony from Koch that he tried to persuade appellant to take a polygraph exam.[2] Upon redirect examination of Koch, the State elicited testimony that appellant refused the test.[3] Appellant's trial counsel did not object to this testimony at trial. Appellant contends that notwithstanding the fact that the matter was raised initially by appellant's trial counsel, who failed to object when it was further delved into by the State, the admission of his refusal to take the polygraph test constituted plain error. We disagree.

Recently, in *Sabag v. Continental South Dakota*, 374 N.W.2d 349 (S.D.1985), we reaffirmed our position that the results of polygraph tests are not admissible in South Dakota criminal cases. *See also State v. Muetze*, 368 N.W.2d 575 (S.D.1985); *State v. Watson*, 248 N.W.2d 398 (S.D.1976); *State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246 (1972). It has also generally been held improper to admit evidence that an accused was unwilling to take a polygraph test. *See, e.g., State v. Madsen*, 125

---

2. Counsel: Okay. Now, this incident about paying the money back—let me jump ahead first. Didn't you try to talk the Defendant into taking a polygraph test?
   Koch: That's correct.
   Counsel: And I think you said, "I think you should take a polygraph test," didn't you?

   Koch: Yes, sir.

3. State's Attorney: He didn't want to take a polygraph, though did he?
   Koch: No, Sir.
   State's Attorney: No further questions.

Ariz. 346, 609 P.2d 1046 (1980); *People v. Hogan,* 183 Cal.Rptr. 817, 31 Cal.3rd 815, 647 P.2d 93 (1982); *People v. Carter,* 48 Cal.2d 737, 312 P.2d 665 (1957); *State v. Zaehringer,* 280 N.W.2d 416 (Iowa 1979); *State v. Kolander,* 236 Minn. 209, 52 N.W.2d 458 (1952).

█ In the present case, however, appellant's counsel not only broached the subject when he asked Detective Koch if he did, in fact, request that appellant submit to a polygraph exam, counsel failed to object when the State continued in the same vein and elicited from Koch the fact that appellant refused the test. Generally, the trial court must have been afforded an opportunity to rule upon a point of law by proper motion or objection before this court of review will entertain an argument based on the trial court's failure to so rule. *State v. Giuliano,* 270 N.W.2d 33 (S.D.1978); *see also State v. Watkins,* 272 N.W.2d 839 (S.D.1978); *State v. Dietz,* 264 N.W.2d 509 (S.D.1978); *State v. Miller,* 248 N.W.2d 874 (S.D.1978). Appellant asserts, nevertheless, that error is preserved because the trial court's admission of his refusal to submit to the polygraph constitutes plain error under SDCL 23A-44-15. "We have recognized the plain error rule, but only in exceptional cases, and then it must be applied cautiously. The rule does not encompass every error that occurs at trial, but only those errors which are both obvious and substantial." *State v. West,* 344 N.W.2d 502, 504 (S.D.1984); *State v. Dace,* 333 N.W.2d 812 (S.D.1983); *State v. Brammer,* 304 N.W.2d 111 (S.D.1981); *see also United States v. Krasn,* 614 F.2d 1229 (9th Cir.1980); *United States v. Jackson,* 542 F.2d 403 (7th Cir.1976); *United States v. Cowden,* 545 F.2d 257 (1st Cir.1976); *Kramer v. United States,* 408 F.2d 837 (8th Cir.1969).

█ We do not believe that the claim set forth by appellant rises to the level of plain error. We note that Detective Koch's request that appellant submit to a polygraph test was raised initially by appellant's trial counsel. Given this fact, the disclosure of appellant's refusal to take the test was not

such an egregious and substantial error as would constitute plain error. Nevertheless, we acknowledge the possible prejudice involved in eliciting such refusal and admonish courts to guard against such testimony in the future.

Finally, appellant contends that his conviction should be overturned because he was not afforded effective assistance of counsel. State counters that ineffective assistance of counsel may not be raised on direct appeal. Although we held in *State v. McBride,* 296 N.W.2d 551 (S.D.1980), that post-conviction relief is the most appropriate means to present such an issue, in *State v. Phipps,* 318 N.W.2d 128 (S.D. 1982), we identified an exception which allows the issue of incompetent counsel to be raised on direct appeal when representation at trial was "so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights[.]" *Phipps,* 318 N.W.2d at 131. We reaffirmed the exception in *State v. Tchida,* 347 N.W.2d 338 (S.D.1984) and *State v. Iron Shell,* 336 N.W.2d 372 (S.D.1983).

In *Jones v. State,* 353 N.W.2d 781 (S.D. 1984), this court reiterated the standards set by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as follows:

[A] defendant must show: 1) that counsel's performance was deficient; and 2) that the deficient performance prejudiced the defense. The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In making these evaluations, the proper standard for attorney performance is that of 'reasonably effective assistance.' Counsel is strongly presumed to have rendered adequate assistance, and a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

353 N.W.2d at 784.

█ When reviewing claims of ineffective assistance of counsel, our function is

not to second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney. We will not, however, hesitate to reverse a conviction if the record reveals that a defendant was not afforded effective assistance. *Jones, supra; Grooms v. State,* 320 N.W.2d 149 (S.D. 1982).

In examining the competency question, we note the record indicates the State's case against appellant was based entirely on circumstantial evidence. No witness saw him take the money allegedly stolen from the till at Powell's, nor was any money recovered from appellant. Appellant points to several errors made by his trial counsel which we believe warrant a finding of ineffective assistance, given the circumstantial nature of this case.

■ First, during defense counsel's cross-examination of State's witness, Roger Heathcote, counsel elicited testimony that Heathcote suspected appellant of having stolen over one hundred dollars from Powell's in the spring of 1984. This testimony could not have accomplished anything other than to create prejudice in the minds of the jury against appellant. Secondly, as stated *supra,* counsel elicited testimony from Detective Koch that he had asked appellant to take a polygraph exam, thereby opening up the issue for State. Then counsel failed to object when state offered evidence on cross-examination that appellant refused the test. While the decision to refrain from making an objection is generally within the discretion of the trial attorney, *Tchida, supra,* in this instance, trial counsel in effect opened the door to this testimony. As the court stated in *Kolander,* 236 Minn. at 222, 52 N.W.2d at 465:

> The impact upon the minds of the jurors of a refusal to submit to something (i.e., a lie detector) which they might well assume would effectively determine guilt or innocence ... might well be more devastating than a disclosure of the results of such test, if given after a proper foundation had been laid showing how the apparatus functioned. Where a con-

viction rests so completely on circumstantial evidence, the erroneous admission of such action on the part of defendant might well be enough to tip the scales against him.

Under the circumstances of the case, we can perceive no conceivable strategic or tactical advantages afforded appellant as the result of these actions by his trial counsel. Nor, do we believe counsel deliberately created these errors to establish a record for later reversal. Rather, it was the result of inexperience. Although there is enough circumstantial evidence to sustain a conviction, we believe there is a reasonable probability that, but for these errors, the result of the proceeding would have been different.

Accordingly, we reverse and remand the case for a new trial.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, concurs.

HENDERSON, J., concurs by writing.

FOSHEIM, J., concurs specially.

MORGAN, J., concurs in part and dissents in part.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring).

*Strickland* further provides:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *A reasonable probability is a probability sufficient to undermine confidence in the outcome.*

*Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984) (emphasis supplied).

Reviewing this representation of counsel, which was not the customary skill nor diligence of a reasonably competent attorney under similar circumstances, *see High Elk v. State,* 344 N.W.2d 497 (S.D.1984), I am

convinced there is a probability sufficient to undermine confidence in the outcome.

FOSHEIM, Chief Justice (concurring specially).

The fact that counsel for appellant initiated testimony on the officer's request that appellant take a polygraph exam is not controlling. This court has consistently ruled against introduction of evidence concerning polygraph results. *See, e.g., Sabag v. Continental South Dakota,* 374 N.W.2d 349, 352 (S.D.1985), and other cases cited by the majority. It is important that this decision is not read to impliedly authorize counsel to enter inadmissible polygraph related evidence via the back door. If reversible error was not present due to ineffective assistance of counsel, I would have urged reversal on the plain error doctrine due to the prejudicial nature of the polygraph related evidence.

MORGAN, Justice (concurring in part and dissenting in part).

I concur in part and dissent in part.

I agree completely with the disposition of the first two issues, i.e., the polygraph refusal and the admission of the testimony regarding the attempt to repay the money. I dissent on the disposition of the third issue on incompetence of counsel.

I agree that the conviction stands entirely on circumstantial evidence. In *State v. Schafer,* 297 N.W.2d 473, 476–77 (S.D. 1980), we stated again our rule on convictions upon circumstantial evidence:

[T]o warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with guilt of the party charged and such as cannot by any reasonable theory be true that the party charged be innocent. (citations omitted) ... To support a conviction on circumstantial evidence, it is not necessary to exclude every possible hypothesis of innocence. (citations omitted).

In this instance, I cannot imagine a stronger circumstantial case. The register was opened three times in a very short period of time. The first time the money was there, the third time it was not, and in between Dornbusch was in the immediate vicinity alone. Coupled with that, he tried unsuccessfully to buy off the prosecution by offering to repay the money. With all that evidence before the jury, I cannot believe that the testimony regarding the refusal to take a lie detector test tipped any scale against Dornbusch. As far as the inquiry regarding the complaining witness' previous suspicions against Dornbusch, I would say that was clearly a trial tactic to illicit sympathy for Dornbusch against the complaining witness whom they were attempting to portray as picking on him. In short, I do not think that this prejudice rises to the *Strickland v. Washington* test. I do not agree that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. I would not put the taxpayers of Codington County to the expense of another trial.