STATE of South Dakota, Plaintiff
and Appellee,

v.

Larry E. ANDERSON, Defendant
and Appellant.

No. 14999.

Supreme Court of South Dakota.

Argued March 17, 1986.

Decided May 21, 1986.

Grant Gormley, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Russell D. Kading of Moore, Rasmussen, Sabers and Kading, Sioux Falls, for defendant and appellant.

WUEST, Justice.

This is an appeal from a judgment of conviction for grand theft by embezzlement, under SDCL 22–30A–10 and SDCL 22–30A–17. We dismiss the appeal.

Larry E. Anderson (appellant) was employed as a truck driver for Apple Truck Lines, Inc. On January 17, 1985, pursuant to instructions from his employer, appellant loaded four-hundred-fifty 100-pound bags of sugar onto his truck at the Crystal Sugar Plant in Crookston, Minnesota. He then drove to Grand Forks, North Dakota, but received instructions to return to Crookston to pick up two 55-gallon drums of paint left behind at the Crookston International Harvestor dealership. Appellant drove back to Crookston, loaded the paint, sealed his truck, and returned to Grand Forks. Snow was falling and he was told to remain there until the weather improved.

The next day, January 18, 1985, at around noon, appellant left Grand Forks and drove to Fargo, North Dakota, where he refueled before proceeding to the site of the theft, the Prairie Junction Truck Stop. He arrived there around 6:00 p.m. David Blackwell (Blackwell), another truck driver for Apple Truck Lines, testified that he arrived at the truck stop at about 9:00 p.m. and parked next to appellant's truck. He

noticed appellant talking with someone seated in a brown Ford pickup parked next to appellant's truck. Before Blackwell got out of his truck, appellant approached and began talking to him. In the course of the conversation, appellant asked him where he was headed. Blackwell told appellant he was going to the truck terminal in Madison, South Dakota, to which appellant replied, "Oh, well, if you wasn't going to the terminal I would give you a couple bags of sugar." Blackwell testified that, about twenty minutes later, he saw the brown pickup pull out loaded with large plain brown bags. After which appellant walked into the cafe and sat in a booth with Blackwell. While visiting, appellant told Blackwell he had just loaded nineteen bags of sugar into the back of a pickup.

Appellant drove from Prairie Junction to the truck terminal in Madison, arriving there at approximately 10:00 p.m. He parked in the rear, entered the terminal shop and asked that someone be sent out with a forklift to unload the paint drums from his truck. Appellant returned to his truck alone and cut the seal, contrary to company policy requiring the presence of another to witness the seal breaking and sign a delivery receipt, and despite the fact that he had been previously reprimanded for breaking his load seals without following the proper procedures. A forklift operator unloaded the paint after which appellant unhooked his trailer and drove the truck into the shop. He then took the bill of lading to the dispatcher, who told him to stay in town because the personnel manager and cargo claims supervisor wanted to interview him in the morning. On January 19, 1985, David Thomas (Thomas), the cargo claims supervisor, questioned appellant about prior loads which had come up short on several occasions. Appellant had reported losses on previous shipments, including seventy-nine boxes of packaged meats, a pallet of microwave popcorn, and several swimming pools. Thomas terminated appellant's employment after failing to receive a satisfactory explanation for the losses.

Although Blackwell arrived at the terminal shortly after appellant, he testified he did not tell anyone about the sugar theft at Prairie Junction because he believed appellant would be caught when he delivered the load to its final destination. When Blackwell learned the next day that appellant had been fired, however, he warned the driver replacing appellant to count his load. On January 20, 1985, Thomas examined the contents of appellant's trailer and found only four-hundred-four bags of sugar.

On January 22, 1985, a complaint was filed charging appellant with grand theft by embezzlement, in violation of SDCL 22–30A–10 and SDCL 22–30A–17. A preliminary hearing was held on February 11, 1985, and appellant was bound over for trial. On April 15, 1985, he was tried before a jury and found guilty of the offense. On appeal, appellant contends he was denied effective assistance of counsel in that his attorney failed to: (1) make motions in limine with regard to the termination of appellant's employment for load shortages prior to the offense in question; (2) motion for a judgment of acquittal after the jury returned a verdict; (3) request a limiting instruction when evidence of prior shortages was introduced; (4) call witnesses; and (5) object to the admission of a statement showing appellant's load was short.

█ This court has repeatedly held that habeas corpus (formerly post-conviction) relief is the preferable means to present an allegation of ineffective assistance of counsel. *State v. Hammond,* 357 N.W.2d 278 (S.D.1984); *State v. Tchida,* 347 N.W.2d 338 (S.D.1984); *State v. Iron Shell,* 336 N.W.2d 372 (S.D.1983); *State v. Phipps,* 318 N.W.2d 128 (S.D.1982); *State v. McBride,* 296 N.W.2d 551 (S.D.1980). We will not consider the issue on direct appeal unless "the defense at trial was so ineffective and counsel's representation so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights[.]" *Phipps,* 318 N.W.2d at 131.

█ Upon review of the trial record in this appeal, we find the defense at trial neither so ineffective, nor counsel's repre-

sentation so casual, as to show a manifest usurpation of appellant's constitutional rights. We note that appellant's contentions are primarily related to trial counsel's failure to make motions or objections. These are generally trial decisions within the discretion of trial counsel. *Tchida, supra.* It is not our function to second-guess the tactical decisions of counsel, and we will not attempt to substitute our own theoretical judgment for that of appellant's defense counsel. *Jones v. State,* 353 N.W.2d 781 (S.D.1984); *Jibben v. State,* 343 N.W.2d 788 (S.D.1984); *Grooms v. State,* 320 N.W.2d 149 (S.D.1982).

We prefer habeas corpus relief as the means to consider incompetent counsel claims, in part, because a sufficient record on the merits can be made, enabling proper appellate review. *McBride, supra.* The scant record in the instant case makes it difficult to assess the decisions made by the defense counsel. We cannot tell from the record, for example, why counsel did not call appellant's wife to testify on his behalf. Perhaps her testimony would not have been as exculpatory as appellant posits on appeal. Indeed, she may not even have been present at the truck stop where the theft took place. Nor do we know why counsel decided to elicit from appellant the circumstances of his termination as a truck driver with Apple Truck Lines.

■ In *State v. Dornbusch,* 384 N.W.2d 682 (S.D.1986), this court held the actions of appellant's trial counsel were such that we could perceive no conceivable strategic or tactical advantage afforded appellant. We further held that but for counsel's errors, there was a reasonable probability that the results of the proceeding would have been different. The present case differs from *Dornbusch.* Admittedly, counsel's tactics appear peculiar when viewed in retrospect without the benefit of additional facts. The record, however, provides ample evidence upon which the jury could have found appellant guilty of theft by embezzlement, even absent the proffered errors, and we do not deem these alleged inadequacies to be a "manifest usurpation of appellant's constitutional rights[.]" *Phipps,* 318 N.W.2d at 131. Therefore, we decline to address the merits of appellant's claims. Our decision does not deny appellant the right to raise the issue of ineffective assistance in a petition for habeas corpus relief.

FOSHEIM, C.J., MORGAN, J., and DUNN, Retired J., concur.

HENDERSON, J., concurs specially.

DUNN, Retired J., sitting for SABERS, J., disqualified.

HENDERSON, Justice (specially concurring).

There were serious errors, committed by defense counsel, in the defense of this case. So that the reader may appreciate the import of this decision, it should be noted that appellant claims the following deficiencies and, thusly, ineffective assistance of counsel:

(1) Failure to object to, or make motions in limine concerning prior alleged shortages, not thefts;

(2) failure to object to or make a motion in limine concerning testimony regarding termination of his employment;

(3) failure to make a motion for a judgment of acquittal after the jury returned a guilty verdict;

(4) failure to request a limine instruction at the time evidence of the prior shortages was given;

(5) the introduction of an exhibit containing a statement which, in effect, stated that appellant stole the items in question; and

(6) failure to call any defense witnesses to the stand on behalf of appellant.

Defense counsel, unquestionably, failed to make proper objections, motions, and to pursue a well-prepared defense. However, the controlling case on ineffective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* added a new dimension to the law on ineffective

assistance of counsel with several key statements which must be examined in all of these ineffective assistance of counsel cases. *Strickland* teaches us:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *Strickland* also tells us that an error by counsel, even if unprofessionally unreasonable, does not warrant setting aside the judgment if the error had no effect on the judgment. Furthermore, under *Strickland*, deficiencies in the performance of counsel must be prejudicial in order to constitute ineffective assistance. This then brings us to the penultimate and ultimate declarations in *Strickland*. If prejudice is to be found, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. *See also, State v. Dornbusch*, 384 N.W.2d 682, 687 (S.D.1986) (Henderson, J., concurring), which highlights this language.

Counsel at the trial court level did not make tactical errors; rather, he simply failed to make timely objections to improper, damaging evidence. Counsel should have made pretrial motions concerning the prior acts testimony, for it was professional performance which would be within the customary skills and diligence of a reasonably competent attorney.

However, in this case, the record presents rather overwhelming evidence of appellant's guilt at trial. In fact, the State had an eyewitness to the charge of Grand Theft by Embezzlement, specifically, that he was entrusted with bags of sugar owned by E.J. Brachs and Sons Company and did appropriate that property with intent to defraud. David Blackwell testified that he witnessed a truck parked next to appellant's truck, pull out of the parking lot loaded with large, plain brown bags (sugar). Later, appellant entered a cafe where Blackwell was and bragged to Blackwell that he had just loaded 19 bags of sugar into a pickup truck. Blackwell testified that earlier that day, appellant had approached him at a truck stop and asked him if he was driving into the main terminal at Madison, South Dakota. Witness Blackwell stated that he was, and appellant then retorted: "Oh, well, if you wasn't going to the terminal I would give you a couple of bags of sugar." An extreme set of incriminating facts exists here.

Therefore, it strikes me that appellant has failed to satisfy the heavy, if not severe, burden placed upon him by the language in *Strickland*. This overwhelming evidence does not permit a reversal of this conviction because of ineffective assistance of counsel.