**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Ross JACKSON, Defendant and Appellant.**

**No. 14774.**

Supreme Court of South Dakota.

Considered on Briefs May 21, 1985.

Decided July 10, 1985.

Grant E. Gormley, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jay C. Shultz of Lynn, Jackson, Shultz & Le Brun, Rapid City, for defendant and appellant.

WUEST, Acting Justice.

Ross Jackson (appellant) appeals from a final judgment on two counts of encouraging another to become or remain a prostitute. We affirm.

Appellant and his wife operated two businesses in Rapid City, South Dakota, "The Playgirls Retreat Club" (Retreat Club) and "The Playgirls Dating or Escort Service" (Escort Service). The Retreat Club offered its members live dancing, hot tub relaxation, therapy and massages. The Escort Service provided its customers with dancers, models, and dates. Customers of the Escort Service were charged an agency fee of $25.00 and a commission of the total price negotiated between the customer and his escort. Appellant and his wife maintained detailed records of receipts and payroll accounts for both businesses. Appellant kept ledgers which recorded the number of dates and dancing engagements each week, of each employee, and the income from each appointment. Appellant withheld federal income tax on the employees' gross income.

Appellant was charged in a five-count indictment with encouraging, inducing, procuring, or otherwise purposely causing Traci Sasse, Starla Storkson, and three other employees of the Escort Service, to become or remain prostitutes. On the first day of trial, the State dismissed all counts except those referring to Traci Sasse and Starla Storkson. They were granted "use and derivative use immunity" in exchange for their testimony. Both girls testified they were hired personally by appellant. In both cases, the hiring process involved a sensitivity session where appellant asked the girls to get naked and then rubbed oil on the girls and massaged their bodies. In one case, the sensitivity session ended with sexual intercourse between appellant and the hired girl. In the other case, the hiring process resulted in oral sex. In both cases, the girls were hired by appellant's Escort Service. They were driven by him to private motel rooms to meet male customers and to perform their services. Those services consisted of nude dancing and sexual intercourse. Appellant told the girls that, once in the motel, they should play a tape recorder loudly enough to drown out their conversation with the customer concerning price, in case the room was bugged. The going price was a $25 agency fee (which went to appellant and his wife) and $50 an hour for the girl. After sexual intercourse, the girl was to fill out an identification card on each customer. The cards were filed (on a rolodex) at appellant's house.

At trial, appellant admitted that (1) his handwriting was on the cards on the rolodex, (2) he participated in sensitivity sessions, (3) his girls provided their escort services at a customer's home or private motel room, (4) he drove the girls to the motel for the "date," (5) he checked some of the girls for electronic bugs because he did not want any police officers working for him, (6) the rolodex (and cards) were business records from his escort service, and (7) the rolodex cards contained information pertaining to the customers' sexual desires and characteristics. Appellant told one of his employees "nobody is going to pay fifty to a hundred dollars for watching you dance." He told another she could make more money by "being friendly." Starla Storkson testified that she engaged in sexual activities with customers for a fee during the time she was employed by appellant. Traci Sasse also testified that on a number of occasions she had engaged in sexual activities with customers for a fee during the time she was employed by ap-

pellant. Appellant received a percentage of these fees.

At trial, State introduced four exhibits. Exhibit 1 consisted of the handwritten set of instructions, front and back, instructing the employees on how to properly answer incoming calls from customers requesting dancers, models, or dates. It further instructed the employees on how to survey a motel parking lot for undercover police cars, how to check a given room for police surveillance equipment, and how to collect all money "up front" from the customer. Exhibit 2 was the rolodex customer file containing a physical description of each customer, where he was from, which girl he dated, and whether he was a low or high paying customer. These exhibits were seized from appellant's home by the Rapid City Police Department, pursuant to a valid search warrant. Upon arrival at appellant's house, the officers served an unsigned and undated copy of the search warrant upon him.

■ SDCL 23A–35–10 provides that a law enforcement officer taking property under a warrant must give "a copy of the warrant" to the person from whom the property is taken. The officers conducted a search of the home and seized the property authorized for seizure by the warrant. Prior to trial, appellant made a motion to suppress Exhibits 1 and 2 because the copy was unsigned and undated.

Appellant cites *State v. Cochrane*, 84 S.D. 527, 173 N.W.2d 495 (1970), which holds that statutes regulating searches and seizures are to be strictly construed against the state. In *Cochrane*, however, the original search warrant was never signed. In the case at bar, there was a valid, dated, and signed original search warrant. Appellant also received a copy of the warrant, as provided by statute, but because it was undated and unsigned, it was not a true and correct copy. Neither federal nor state constitutional provisions regulating search warrants provide for service of a copy when property is being seized. Thus, we are dealing with a statutory omission as distinguished from an error of constitutional proportions.

The copy did describe the premises being searched and the property being seized. In our opinion, this copy was in substantial compliance with the statute and the exhibits were not subject to suppression.* *State v. Steingraber*, 296 N.W.2d 543 (S.D.1980).

■ Appellant argues that his conviction for procuring and promoting prostitution was completely based on the uncorroborated accomplice testimony of Starla Storkson and Traci Sasse, in violation of SDCL 23A–22–8, which reads as follows:

A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

Starla Storkson and Traci Sasse, however, were not accomplices of appellant. They were prostitutes, in violation of SDCL 22–23–1, which provides:

Any person who:

(1) Is an inmate of a house of prostitution or otherwise engaged in sexual activity for a fee; or

(2) Loiters in or within view of any public place for the purpose of being hired to engage in sexual activity;

is guilty of prostitution. Prostitution is a Class 2 misdemeanor.

Appellant, on the other hand, was convicted of procuring and promoting prostitution, in violation of SDCL 22–23–2, which provides:

Any person who:

(1) Encourages, induces, procures or otherwise purposely causes another to become or remain a prostitute;

(2) Promotes prostitution of a minor; or

* The State claims appellant was told about the original warrant at the commencement of the search and, upon request, appellant's counsel was provided a conforming copy of the original warrant.

(3) Promotes prostitution of his spouse, child, ward or any person for whose care, protection or support he is responsible;

is guilty of a Class 5 felony.

"An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial." *State v. Johnson,* 81 S.D. 600, 606, 139 N.W.2d 232, 236 (1965); *see also State v. Dominiack,* 334 N.W.2d 51, 52 (S.D.1983). Since Starla Storkson and Traci Sasse cannot be convicted of encouraging "another" to be a prostitute, they were not accomplices of appellant. Appellant urges that the evidence was insufficient to corroborate the testimony of Storkson and Sasse, but we hold that they are not accomplices, therefore, that issue need not be addressed.

 Appellant claims the trial court erred when it refused his proposed instruction that the offense of hiring a prostitute, SDCL 22–23–9, was a lesser included offense of encouraging another to become or remain a prostitute. SDCL 22–23–9 provides: "Any person who hires a prostitute to engage in sexual activity, or enters or remains in a house of prostitution for the purpose of engaging in sexual activity, commits a Class 2 misdemeanor." In determining whether a trial court should submit a lesser included offense instruction to the jury, two tests must be satisfied. The first is a legal test, the second is factual. *State v. Cook,* 319 N.W.2d 809 (S.D.1982); *State v. Pickering,* 317 N.W.2d 926 (S.D. 1982); *State v. Heumiller,* 317 N.W.2d 126 (S.D.1982); *State v. Oien,* 302 N.W.2d 807 (S.D.1981). The legal test of a necessarily included offense requires that (1) the elements of the included offense are fewer in number than the elements of the greater offense; (2) the penalty for the included offense is less than the greater charged offense; and (3) the two offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser. *Cook, supra; Pickering, supra; Heumiller, supra; Oien, supra.*

In the instant case, the legal test has not been satisfied. SDCL ch. 22–23 punishes three actors in the prostitution process: (1) the prostitute, SDCL 22–23–1; (2) the procurer or pimp, SDCL 22–23–2 and –8; and (3) the customer, SDCL 22–23–9. The obvious difference between the procurer or pimp and the customer is that the procurer or pimp induces the prostitute to engage in prostitution for the procurer's financial benefit; whereas, the customer pays the prostitute for the customer's personal sexual gratification.

The third legal test for a lesser included offense—the greater offense cannot be committed without also committing the lesser—is not met in the situation where a defendant is a pimp, because a pimp does not have to be a customer.

It should also be noted that the "procured" person in SDCL 22–23–2(1) may be either a prostitute or a non-prostitute; whereas, the "hired" person in SDCL 22–23–9 must be a prostitute. Therefore, a defendant may again be a pimp without being a customer.

The legal test has not been satisfied here; therefore, we will not address the factual test.

The judgment of the trial court is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

I concur in the result of this opinion but disagree upon its reliance on *State v. Steingraber,* 296 N.W.2d 543 (S.D.1980). *Steingraber* is inapposite as it pertained to a question involving officers substantially complying, or not complying, with the statutory requirements of a "no-knock" entrance.

Rather, my position would be that the noncompliance with the statutory procedure, in this particular factual scenario, was immaterial as there was a valid search warrant and the failure to conform on the copy was of a slight, ministerial nature.

*State v. Glick,* 87 S.D. 1, 5, 201 N.W.2d 867, 869 (1972); *State v. Van Beek,* 87 S.D. 598, 603, 212 N.W.2d 659, 662 (1973).

This search warrant was issued by a circuit judge in February 1984; although I cite it not for authority to determine the issue here, but to point out the transitory precedent of this decision, in July 1984, the United States Supreme Court legitimatized the good-faith exception to the exclusionary rule. In essence, per *United States v. Leon,* 468 U.S. ——, ——, 104 S.Ct. 3405, 3414, 82 L.Ed.2d 677, 689 (1984),* the Nation's highest Court held that the exclusionary rule should be modified "to permit the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." (Citation omitted.)

Appellant is arguing that the action of the Rapid City Police Department was illegal and bases it upon an immaterial technicality, i.e., a copy of the search warrant served upon defendant was not exactly the same as the original. SDCL 23A–35–10 provides in part: "An officer taking property under a warrant shall give to the person from whom or from whose premises the property was taken, a copy of the warrant...." This is identical to Rule 41(d) of the Federal Rules of Criminal Procedure. Our federal brothers have, in effect, buttressed the holdings in *Glick* and *Van Beek.* "Violations of Rule 41(d) are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non-compliance with the rule was intentional or in bad faith. Failure to deliver a copy of the search warrant to the party whose premises were searched until the day after the search does not invalidate a search in the absence of a showing of prejudice." *United States v. Marx,* 635 F.2d 436, 441 (5th Cir.1981) (citations omitted).

"[F]ailure to serve even the warrant is merely a ministerial violation of Rule 41(d) of the Federal Rules of Criminal Procedure and would not render the search fatally defective." *United States v. Hubbard,* 493 F.Supp. 209, 219 (D.D.C.1979), *aff'd,* 215 D.C.App. 206, 668 F.2d 1238 (1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). "Although important, the procedures required for execution and return of a search warrant, contained in Rule 41(d) of the Federal Rules of Criminal Procedure, are ministerial. Absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search." *United States v. McKenzie,* 446 F.2d 949, 954 (6th Cir.1971). "In order to show prejudice in this context, [defendant] must show that [he was] subjected to a search that might not have occurred or would not have been so abrasive had [Rule 41(d), Fed.R.Crim.P.] been followed." *Hearn v. Internal Revenue Agents,* 597 F.Supp. 966, 971 (N.D.Tex.1984). Here, defendant Jackson cannot show such prejudice. Thus, I concur with the majority opinion.

* On the same subject of the exclusionary evidence rule, *see Massachusetts v. Sheppard,* 468 U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) and *Immigration & Naturalization Service v. Lopez-Mendoza,* 468 U.S. ——, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), both of which are companion cases and handed down by the United States Supreme Court on the same date. These three cases radically changed the law of evidence in criminal proceedings in the courts of this land. In 1961, Chief Justice Burger individually wrote that he would abolish the exclusionary rule. This philosophy has been gradually implemented throughout the courts and continues to be expanded.