**Wayne WOODS, Petitioner and Appellant,**

v.

**Herman SOLEM, Warden, South Dakota Penitentiary, Respondent and Appellee.**

**No. 15366–a–FEH.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided April 22, 1987.

Rehearing Denied May 15, 1987.

Richard Braithwaite of Braithwaite Law Offices, Sioux Falls, for petitioner and appellant.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

HENDERSON, Justice.

## HABEAS CORPUS/APPEAL

This is an appeal from an order denying petitioner-appellant Wayne Woods (Woods) habeas corpus relief. Woods contends that his trial counsel was ineffective in that

(1) Woods was not advised to testify; and

(2) accomplice instructions were not requested regarding Ruben Garcia.

1. The Indictment reads:
Count I: Murder In The First Degree
    That Wayne Woods did willfully, unlawfully and feloniously on or about the 7th day of

Woods is now serving a life imprisonment sentence on a conviction of murder. This conviction is for premeditated murder and not for murder committed in furtherance of a felony.[1] We affirm.

## FACTS

The background facts of this case appear fully in our prior opinion, *State v. Woods*, 374 N.W.2d 92, 94–95 (S.D.1985) (*Woods I*). Reference is made to all of those facts, plus the pertinent facts set forth in this decision.

On January 22, 1986, Woods requested habeas corpus relief. On February 4, 1986, the trial court issued an Order Appointing Attorney for purposes of the Writ of Habeas Corpus. The court issued a Writ of Habeas Corpus on February 28, 1986. A hearing was held on April 4, 1986. Woods alleged that his trial counsel, Kenn Pugh (who also acted as Woods' counsel on appeal), was ineffective. The trial court, by Order filed May 8, 1986, denied Woods habeas corpus relief. On May 13, 1986, the same court issued a Certificate of Probable Cause. Woods appeals from the May 8 Order. Both Woods and State couch two issues to be considered, word for word, in their respective briefs, which we treat seriatim.

## DECISION

### I.

WAS TRIAL COUNSEL'S ADVICE TO DEFENDANT THAT HE NOT TAKE THE STAND A FAILURE TO EXERCISE GOOD FAITH JUDGMENT?

Those accused are guaranteed the right to counsel. U.S. Const. amend. VI; S.D. Const. art. VI, § 7; *Jones v. State*, 353 N.W.2d 781, 783 (S.D.1984). "[T]he controlling case on ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Anderson*, 387 N.W.2d 544, 546 (S.D.1986) (Henderson, J., specially

November, 1983, without authority of law, perpetrate and with a premeditated designed [sic] to effect the death of the person killed, kill James Everett. Contrary to SDCL 22–16–4.

concurring). *See also Jones,* 353 N.W.2d at 784–85. We have stated that the standard enunciated in *Strickland* is in accord with, though less restrictive than, our prior method for reviewing ineffective assistance of counsel claims. *Preston v. State,* 356 N.W.2d 907, 908 n. 2 (S.D.1984) (per curiam); *Jones,* 353 N.W.2d at 784–85; *Stacey v. State,* 349 N.W.2d 439, 443 n. 2 (S.D.1984). *See, e.g., Williams v. State,* 349 N.W.2d 58 (S.D.1984); *State v. Tchida,* 347 N.W.2d 338 (S.D.1984); *High Elk v. State,* 344 N.W.2d 497 (S.D.1984); *State v. McBride,* 296 N.W.2d 551 (S.D.1980).

▇ In *Strickland,* the United States Supreme Court noted that to succeed on an ineffective assistance of counsel claim, the defendant must show two requirements.

First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (quoted in *Anderson,* 387 N.W.2d at 547 (Henderson, J., specially concurring)). *Accord State v. Dornbusch,* 384 N.W.2d 682, 687 (S.D.1986) (Henderson, J., concurring); *State v. Hammond,* 357 N.W.2d 278, 280 (S.D.1984) (Wuest, Acting J., specially concurring); *Jones,* 353 N.W.2d at 784. We also note that even an unprofessional error by counsel will not result in a judgment being set aside if the error had no effect on that judgment. *See Hammond,* 357 N.W.2d at 280 (Wuest, Acting J., specially concurring); *Jones,* 353 N.W.2d at 784. Moreover, under *Strickland,* ineffective assistance of counsel will be found only if counsel's errors were prejudicial. If prejudice is found, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Anderson,* 387 N.W.2d at 547 (Henderson, J., specially concurring) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). *See Hammond,* 357 N.W.2d at 280 (Wuest, Acting J., specially concurring); *Stacey,* 349 N.W.2d at 443 n. 2. *See also Dornbusch,* 384 N.W.2d at 687 (Henderson, J., concurring) (which also highlights this language); *Jones,* 353 N.W.2d at 784. With this prologue in mind, we turn to the issues at hand.

Woods alleges that his trial counsel advised him not to testify. Woods claims this advice was erroneous and his trial counsel adhered to a strategy which offered little or no chance of success. Woods observes that a failure to testify is a "high risk" defense.

Woods' counsel admits he encouraged Woods not to testify. Attorney Pugh notes that Woods told two different stories of the shooting. Version one (told to Deputy Juso soon after Woods' arrest on November 18, 1983) stated that Woods went back to the victim's (James Everett) home to apologize to Everett for burglarizing his home. In version two (told by Woods at the habeas corpus hearing and to Deputy Bentliff, the polygraph operator who tested Woods a few hours after his arrest on November 18, 1983), Woods claimed Everett had molested ("raped" or "queered") Woods' younger brother and Everett had threatened the brother not to tell or "he could get hurt." Woods stated he burglarized Everett's home to remove the latter's guns so Everett could not make good on his threat to hurt Woods' brother.

At the remand hearing, Attorney Pugh explained Woods' version one had already been introduced into evidence via Deputy Juso. Attorney Pugh was concerned Woods' testimony would prompt exposure of version two. We observe that an intercepted note written by Woods to his father made reference to the molestation story and was available for impeachment purposes. In addition, Attorney Pugh was afraid revealment of the "rape" could pro-

vide motive/premeditation for Woods' killing of Everett.

The record reveals that Attorney Pugh and Woods reasoned and thoroughly discussed whether Woods should or should not testify. Woods voluntarily agreed that he did not desire to testify. Pugh took the precaution of reducing Woods' agreement not to testify in writing which was introduced as Exhibit 1 below. Additionally, during the trial process, the trial court advised Woods of his right to testify or to not testify and Woods elected to not testify.

■ This Court has stated "our function is not to second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney." *Dornbusch*, 384 N.W.2d at 686–87; *Jones*, 353 N.W.2d at 784. *See State v. McBride*, 296 N.W.2d 551. Pugh, as he was defending Woods, was confronted with two theories of defending this murder case. Pugh could defend Woods on a version of facts which Woods had related to the officers, then in evidence as part of the State's case; or, secondly, Pugh could defend upon a version of facts that Woods later, and now, relates: namely, that he, Woods, went to the house to get guns to prevent Everett from hurting someone. Defense counsel Pugh believed Woods stood a chance of being found guilty of manslaughter, rather than murder. Pugh was most concerned with not supplying a premeditation element out of the mouth of his client. Apparently, up until the time the trial court refused an instruction on lesser-included offenses, Pugh exercised a good-faith judgment in defending Woods and counselled with his client on trial technique—who agreed. Also, as pointed out above, the trial court gave Woods an opportunity to tell the second version of the facts by taking the stand, but this Woods refused to do. We would be holding contrary to oft-expressed South Dakota law if we now held that Attorney Pugh's advice in this matter rose to the level of ineffective assistance of counsel. Argument of Woods on this point is therefore rejected.

## II.

**WAS TRIAL COUNSEL'S REPRESENTATION INEFFECTIVE BECAUSE HE FAILED TO REQUEST AN ACCOMPLICE INSTRUCTION?**

Under the facts and circumstances of this case, we hold that trial counsel did not ineffectively represent Woods by failing to require an accomplice instruction.

We must reach into the factual background to determine Garcia's role in this criminal scenario. On November 7, 1983, at noon, Woods, all by himself, committed burglary at the home of James Everett and stole three rifles, one pistol, a duffel bag, a camera, and a pair of binoculars. Thereupon, Woods returned to Rapid City, South Dakota, and called one Ruben Garcia, a 14-year-old boy, to inform him that he had something to show him. Garcia's father despised Woods, so Woods, telephonically, set up a meeting with the boy to show him the pistol which he had stolen from Everett, and which pistol would be later on used to kill James Everett in cold blood.

Woods persuaded Garcia to go with him back to the Everett residence to steal a few more things and the two of them arrived at about five o'clock that evening. Woods wanted Garcia to go into the house with him and burglarize the house. Garcia refused, stating, at that time, he did not have gloves and his fingerprints were on record (from juvenile probation). So Woods entered the house alone.

Enter Everett on the scene. Woods was now in the house and Garcia, seeing the headlights, ran into the trees to hide. Garcia then watched Woods run out of the front door to join him in the trees. It was then and there, that Woods initiated in his mind, an intent to kill Everett, which intent to kill was neither initiated nor condoned by Garcia. By now, Garcia was a very frightened boy and he told Woods, "Let's get in the car and take off." However, Woods would have nothing of it. Rather, he, Woods, decided to stay and told Garcia, "No, he's already got my license number." Garcia wanted to get away from the Everett residence but Woods persisted in stay-

ing and expressed, "Well, I don't want to get caught so *we're* going to have to shoot him." (Emphasis supplied.) Woods, who had initiated the burglary initially, and initiated the thought of killing Everett, then asked the 14–year-old boy to commit the crime of murder. Whereupon, the frightened boy replied, "I can't." At that time, Woods decided to implement his premeditation and expressed to Garcia, "Well, I'm going to have to do it."

The scene then changes as Woods now walks up to the steps of Everett's home and peeks in the window. Garcia was back in the trees. Woods waited for the proper moment to kill Everett and when he saw Everett in a standing position whereby he could kill Everett, Woods swung the door open, stepped forward, and fired the shot ending his life.

Again, the scene changes. Woods and Garcia now flee the scene and, while returning to Rapid City, Woods rolls his car into the ditch. Later that evening, after the two had hidden the rifles which Woods had stolen earlier, a telephone call was made to Garcia's home that he, Garcia, might have a ride home. Woods later reported his car as being "stolen." During the course of three interviews, Woods admitted to the officers that he had killed Everett. *Miranda* warnings were given before each interview. Woods consented to a search of his home, whereby the murder weapon was found.

Under the settled law of this state, can this Court hold that Garcia is liable to a prosecution for the identical offense charged against the defendant on trial, namely, premeditated murder? We think

not. *See State v. Jackson*, 371 N.W.2d 341 (S.D.1985). In *Jackson*, we held that "[a]n accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial." *Id.* at 344 (quoting *State v. Johnson*, 81 S.D. 600, 606, 139 N.W.2d 232, 236 (1965)).

Woods was convicted of premeditated murder. Woods was not charged with murder by reason of death while engaged in a felony.

We do not believe that Garcia knowingly, voluntarily, and with a common intent—with the principal offender—united in the commission of the crime of premeditated murder. *See* 23 C.J.S. *Criminal Law* § 786(1) (1961).[2] Rather, all facts defy such a conclusion. Garcia wanted to leave the scene after Everett arrived. Garcia did not generate, within his mind, the intent to kill Everett. Woods generated the criminal intent and suggested to Garcia that he shoot and kill Everett. To this, the 14–year-old boy replied, "I can't." It was Woods, not Garcia, who stalked the house, peeked, and then fired a pistol which he, Woods, had stolen. We are not suggesting that Garcia is free from wrong. Surely, when he helped Woods (and it is obvious that he was acting under the influence of an older man) hide the rifles that Woods had earlier stolen after the car rolled, it was wrong. Per the trial transcript, Garcia tried to talk Woods out of killing Everett.

■ Garcia hindered discovery of criminal conduct in hiding the rifles. Garcia was, per SDCL 22–3–5, an accessory to the crime of burglary.[3] We do not believe that

---

**2.** "The various definitions of the term convey the idea that an 'accomplice' is one who is concerned with others in the commission of a crime, and the usual test of whether one is an accomplice of an accused on trial is whether he could be prosecuted and punished for the crime with which the accused is charged." 23 C.J.S. *Criminal Law* § 786(1). This encyclopedia's discussion on the accomplice subject is in accord with our previous holdings in *Jackson*, 371 N.W.2d 341, and *Johnson*, 81 S.D. 600, 139 N.W.2d 232.

**3.** SDCL 22–3–5 provides:
A person is an accessory to a crime, if, with intent to hinder, delay or prevent the discovery,

detection, apprehension, prosecution, conviction or punishment of another for the commission of a felony, he renders assistance to the other person. There are no accessories to misdemeanors.
"Render assistance" means to:
(1) Harbor or conceal the other person;
(2) Warn the other person of impending discovery or apprehension, except that this does not apply to a warning given in an effort to bring the other person into compliance with the law;
(3) Provide the other person with money, transportation, a weapon, a disguise or any

Garcia aided, abetted, or advised Woods in his commission of the crime of premeditated murder as contemplated by SDCL 22–3–3 and SDCL 22–3–3.1.[4] Garcia did not promote or facilitate the crime of premeditated murder. He did not aid, abet, or advise Woods to kill Everett. Neither did he plan the crime of premeditated murder or commit it; thus, we hold that he was not a principal to the crime of murder.

In *State v. Johnson*, 81 S.D. at 606–07, 139 N.W.2d at 236, we expressed:

> If a person after the commission of a felony, conceals or aids the offender with knowledge that he has committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, he is an accessory, SDC 13.-0203, but not an accomplice. [We note that SDC 13.0203 exists under our current statutes, SDCL 22–3–3 and SDCL 22–3–5.]

We therefore hold that Attorney Pugh's failure to request an accomplice instruction, under all of the facts and circumstances of this case, was not ineffective assistance of counsel, as contemplated by our previous decisions and the mandates of S.D. Const. art. VI, § 7, and U.S. Const. amend. VI.

The evidence in this case was totally overwhelming that Woods committed murder of an innocent man without the slightest justification or provocation. He used deception, on the telephone, to take a 14-year-old boy back to the scene of a burglary, which he had committed, to then have the boy witness the murder. It cannot be overemphasized that it was Woods who did the killing and who had the premeditation

and not the 14-year-old boy. We therefore hold, as Garcia was not Woods' accomplice in the crime of premeditated murder, Attorney Pugh need not have requested an accomplice instruction.

Affirmed.

WUEST, C.J., and FOSHEIM, Retired Justice, concur.

MORGAN, J., concurs in result.

SABERS, J., dissents.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

MORGAN, Justice (concurring in result).

On the question of whether this court has adopted the *Strickland v. Washington* test, I submit that to date we have not. As Circuit Judge Moses pointed out in *Lee v. Solem*, 405 N.W.2d 56, 57 (S.D.1987): "When reviewing [ineffective assistance of counsel] claims this court has applied both the more stringent standard of South Dakota and the less stringent standard presented in *Strickland v. Washington*." Judge Moses quoted from *Loop v. Solem*, 398 N.W.2d 140, 142 (S.D.1986), wherein we said that a defendant "must *normally* fulfill the twofold test stated in *Strickland v. Washington*." (Emphasis in original.) I do not think that *Loop* fully adopted the *Strickland* test, nor do I read *State v. Anderson*, 387 N.W.2d 544 (S.D.1986), as doing so. The quotation Justice Henderson relies on for that proposition is taken from

---

other thing to be used in avoiding discovery or apprehension;
(4) Obstruct anyone by force, intimidation or deception in the performance of any act which might aid in the discovery, detection, apprehension, prosecution, conviction or punishment of the other person; or
(5) Conceal, destroy or alter any physical evidence that might aid in the discovery, detection, apprehension, prosecution, conviction or punishment of the other person.
A violation of this section is a Class 5 felony.

**4.** SDCL 22–3–3 provides:
Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets or advises another person in planning or committing the crime, is legally accountable, as a principal to the crime.
SDCL 22–3–3.1 provides:
The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated. Any person connected with the commission of a felony, whether he directly commits the act constituting the offense or aids and abets in its commission, though not present, must be prosecuted, tried, and punished as a principal.

his special concurrence. We have never considered special writings as precedent.

I would concur outright in an opinion that formally adopts the *Strickland* test. We do not have to rely on any of our previous decisions nor on the multitude of special writings cited in the majority opinion. Since the *Strickland* test is less stringent than our South Dakota standards and since ineffective assistance of counsel involves a federal constitutional question, the lesser standard should be and is applicable. I agree that by applying the *Strickland* test to the factual situation in this case, the trial court did not commit error in denying Woods habeas corpus relief.

SABERS, Justice (dissenting).

I dissent.

Woods' attorney should have requested accomplice instructions to attempt to insulate his client from the adverse testimony of Garcia—the only eye witness to the crime to testify at the trial. Defendant had everything to gain and nothing to lose. To fail to do so was a mistake. The majority opinion makes a somewhat plausible but strained argument to convince us that Garcia was not an accomplice, only an accessory. It seems to me that reasonable minds could differ, thereby making it a jury question. *State v. Lingwall*, 398 N.W.2d 745, 747 (S.D.1986); *Grooms v. State*, 320 N.W.2d 149, 151 (S.D.1982); *State v. Johnson*, 81 S.D. 600, 607, 139 N.W.2d 232, 236 (1965). This is especially so when all of the testimony on this question comes from Garcia himself. This is all the more reason to request an accomplice instruction so that Garcia's testimony would be viewed with distrust and not, as the majority paints him, an innocent 14 year old boy deceived into coming along while under the influence of an older man.

In addition, since Woods was charged and convicted with first degree murder and because Garcia had already testified in the State's case in chief, there seems to be very little reason for Woods not to testify in his own defense. Once again, he had something to gain and very little to lose.