Joel WITCHEY, Petitioner
and Appellant,

v.

Walter LEAPLEY, Appellee.

No. 17391.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1991.

Decided April 1, 1992.

Douglas G. Fosheim of Fosheim and Haberstick, Huron, for petitioner and appellant.

Mark Barnett, Atty. Gen., Wade A. Hubbard, Asst. Atty. Gen., Pierre, for appellee.

STEELE, Circuit Judge.

Joel Witchey (Witchey) appeals from an order denying habeas corpus relief. We affirm the circuit court.

## PROCEDURAL HISTORY

Witchey was convicted in Brown County of the crime of rape and sentenced to an indeterminate term of ten to twenty years in the South Dakota State Penitentiary on January 7, 1987.

This habeas corpus petition was filed on September 20, 1990, before the Honorable David Gilbertson, Circuit Court Judge, Fifth Judicial Circuit, Brown County. Judge Gilbertson denied habeas corpus relief and issued a Certificate of Probable Cause on December 5, 1990. Witchey commenced his appeal to this court on December 20, 1990. He claims that he was deprived of effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution and Article VI, § 7 of the South Dakota Constitution.

## FACTS

Only the facts relevant to this appeal will be recited. Witchey and Anita Witchey (Anita) were married in October 1976. In the fall of 1979, D.W. was a student living in Aberdeen, South Dakota. She also worked part time as a waitress at the Holiday Inn in Aberdeen. At approximately 2:30 a.m. on October 6, 1979, while exiting her car after work, she was forcibly abducted and raped by an assailant she did not know. D.W. immediately reported the rape to law enforcement officials; the investigation produced no suspects at the time.

Witchey and Anita were divorced in April 1981. In November 1984 Anita was contacted by detective Glen Spitzer (Spitzer) of the Aberdeen Police Department concerning an attempted rape allegation unrelated to the rape of D.W. During the conversation Anita informed the detective that Witchey had been the perpetrator of a rape in Aberdeen in 1979. Based upon the information supplied by Anita the alleged rape of D.W. was investigated further, and led to the arrest of Witchey on January 2, 1985, more than six years after the incident.

Between the months of July and November 1984, D.W. was employed as a cocktail waitress at the Silver Dollar Bar in Aberdeen. During this time period, she cashed three checks drawn on three separate occasions by Witchey to pay for drinks. She therefore saw Witchey on at least three occasions after the rape but did not recognize him as her assailant.

Law enforcement did not conduct an investigatory pretrial lineup, nor was a pretrial identification process requested by George Rice (Rice), Witchey's counsel. At the preliminary hearing and again at trial, D.W. identified Witchey as her assailant.

Prior to trial, Rice moved to suppress the expected testimony of Anita under the marital communication privilege. The motion was granted by the trial court, and the state appealed the ruling. This Court held in *State v. Witchey*, 388 N.W.2d 893 (S.D.

1986) that the communications at issue were not privileged because the communications concerned a crime in which Witchey and Anita were joint participants.

Rice also moved to suppress the testimony of Anita as to certain other bad acts of Witchey pursuant to SDCL 19–12–5. After an evidentiary hearing, the trial court ruled that she could testify regarding the "cruising of bars" by Witchey to look for women and follow them, concluding that such evidence was relevant and that its probative value outweighed its prejudicial effect.

At trial, detective Spitzer was called as a witness by the state, and was asked the following questions and gave the following answers:

Q: Now, Detective Spitzer, I will now call your attention to approximately November 20th of 1984. Did you then have an occasion to talk to Anita Witchey at that time?

A: Yes.

Q: Now, did you go to Anita Witchey to talk to her? Did she contact you?

A: I went to Anita Witchey.

Q: What was the reason you contacted Anita Witchey?

A: Because we were investigating an assault, attempted rape that had happened to a [L.M.] on November 18th of 1984.

Q: What was the reason that you went to Anita Witchey?

A: Because [L.M.] referred us to Anita Witchey.

Q: What time was that?

A: It was on November 20th of 1984. I believe we talked to her approximately 10:30 in the morning.

Q: And when did the attempted rape occur on [L.M.]?

A: November 18th of 1984.

Q: So you were doing a follow-up investigation on this attempted rape of [L.M.]?

A: Yes.

Q: Were you able to find Anita Witchey?

A: Yes.

Q: Did you talk to her?

A: Yes.

Q: What were you particularly interested in at the time you talked to Anita Witchey on November 20, 1984?

A: To get some background information concerning her ex-husband, Joel.

Q: Why did you want this background information?

A: Because [L.M.] had told us that Joel Witchey would possibly match the description of the person who attacked her.

Q: When you went to talk to Anita Witchey, was she able to provide you any background information concerning the defendant?

A: Yes.

Q: What did she tell you at the time?

MR. RICE: Objection. Any conversation between Anita Witchey and Officer Spitzer as hearsay, not binding on the defendant.

THE COURT: Why would that be hearsay and inadmissible?

STATE'S ATTORNEY: Your Honor, I am not offering this testimony to prove the truth of the matter. I am merely offering this testimony for the chronology of the investigation.

THE COURT: I am going to sustain the objection as to specific conversation.

The prosecutor, through detective Spitzer, attempted to offer into evidence a statement given by Anita to law enforcement on December 7, 1984. Defense counsel objected to the offer, which objection was sustained by the trial court.

At trial, Anita testified that she and her husband went to Aberdeen on 25 or 30 occasions and that Witchey would look for and follow women for the purposes of having sex with them. She also testified that the alleged rape of D.W. occurred in October of 1979; defense counsel pointed out on cross-examination that in her written statement, she alleged that the rape occurred in October of 1978. The prosecutor thereafter recalled the investigating officer in an attempt to explain the inconsistency;

the statement was reoffered at the close of the officer's testimony and received without objection.

After trial, on January 5, 1987, Rice conversed with Witchey about an appeal of the conviction. He informed Witchey that in his opinion no appealable issue existed because of the strong testimony of the victim and Anita, and that if Witchey was successful on appeal and then reconvicted he would face the possibility of an enhanced sentence. Witchey told Rice that he did not wish to appeal.

On January 7, 1987, the court sentenced Witchey and advised him of his right to appeal, the appropriate time limitation, and his right to an attorney on appeal.

On January 8, 1987, Rice mailed a letter to Witchey confirming their conversation of January 5th. The letter recited that if an appeal were taken, it must be commenced within thirty days.

Witchey contends that he mailed a letter to Rice on January 11, 1987, advising that he had changed his mind and wished to appeal. Rice denies having received the letter.

On January 15, 1987, Rice petitioned to withdraw as attorney of record and mailed a copy of the petition, a notice of hearing thereon, and a letter of explanation to Witchey. Hearing on the petition to withdraw was held on January 20, 1987. Witchey did not respond to the petition, either in person or in writing. He contends that he attempted to make arrangements with the prison officials to attend the January 20th hearing, but was not allowed to do so.

The court allowed Rice to withdraw by order dated January 26, 1987.

## DECISION

Witchey's claim is that the performance of his counsel was so deficient that he was deprived of the effective assistance of counsel guaranteed him under the Sixth Amendment to the United States Constitution and Article VI, § 7 of the South Dakota Constitution.

One who claims that he has been denied effective assistance of counsel must show:

1. That counsel's performance was deficient in that errors were made which were so serious that counsel was not functioning as the "counsel" guaranteed by the sixth amendment.

2. That the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Luna v. Solem*, 411 N.W.2d 656 (S.D.1987).

Prejudice exists when "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Woods v. Solem*, 405 N.W.2d 59, 61 (S.D. 1987) (quoting *Strickland*). The burden of proving prejudice rests upon the defendant. *Woods, supra*.

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all of the circumstances and the standard of review is highly deferential. *Luna, supra*.

With the above standards in mind, we examine five areas in which Witchey claims his counsel's performance was deficient and which prejudiced his defense.

### I.

During the period between the rape and the arrest (in excess of six years), the victim had seen Witchey at least three times and had not recognized him as her assailant, and defense counsel knew of that fact. The claim is that counsel should have requested an out-of-court lineup or other identification process before the preliminary hearing to test the accuracy of the victim's expected in-court identification. Defense counsel explained at the habeas corpus hearing that he did not request an out-of-court identification because he felt it

would be better strategy to cross-examine the victim concerning her failure to recognize Witchey as her assailant on the occasions when she saw him after the incident.

Defense counsel's reasoning was sound. If he had requested an out-of-court lineup, and if the court had allowed the request, the victim may well have identified Witchey, which identification would have been admissible in evidence. The victim's credibility would then have been substantially enhanced and the cross-examination would not have been nearly as effective. Therefore, defense counsel's failure to request an out-of-court identification process was not deficient representation. In considering trial tactics of a defense counsel, the court will not substitute its theoretical judgment for that of counsel. *State v. McBride*, 296 N.W.2d 551 (S.D.1980).

## II.

■ Witchey next contends that defense counsel allowed the prosecution to present, without objection, inadmissible evidence of a bad act through the testimony of detective Spitzer. The testimony in question is set forth in the recitation of facts.

The prosecutor was asking foundational questions of Spitzer concerning an interview the detective conducted with Anita; he asked why the detective wanted background information from Anita about Witchey. The detective answered that Witchey possibly matched the description given him by another alleged rape victim. Defense counsel objected on the grounds of hearsay, and the prosecutor responded that he was not offering the evidence to prove the truth of the matter asserted, but solely for the purpose of laying foundation for the chronology of the investigation. The court sustained the hearsay objection as to "specific conversation." Defense counsel did not ask for a limiting instruction or move for a mistrial.

We assume without deciding that (1) Spitzer's testimony related a bad act inadmissible under SDCL 19–12–5, and (2) that defense counsel's failure to move for a mistrial or request a limiting instruction constituted deficient performance. Even

so, we conclude that under the circumstances the deficiency did not prejudice Witchey's right to a fair trial.

The answer given by Spitzer concerning another rape allegation was not responsive to the question, which foreclosed defense counsel's opportunity to object before the answer was given. The prosecutor made it clear that the proffered evidence was offered only as foundational. There was subsequent evidence of other bad acts which had been ruled allowable by the trial court. There was strong testimony by both the victim and by Anita as to the occurrence of the rape and the identification of Witchey as the perpetrator. We are firmly convinced that the result would have been the same had Spitzer not made the disputed statement. Therefore, this contention fails the second part of the *Strickland–Luna*, test in that no prejudice has been shown.

## III.

■ Witchey next claims that Anita was allowed to testify that she was present with Witchey on 25 or 30 occasions when Witchey looked for and followed other women for the purpose of trying to have sex with them, and that there was nothing in the record as to a finding of the court that the evidence was admissible.

There is no merit to this contention. Defense counsel moved prior to trial to exclude prior bad acts. The court held an evidentiary hearing, and made the required determination that Anita's proffered testimony was relevant, and that its probative value outweighed its prejudicial effect. *Roden v. Solem*, 431 N.W.2d 665 (S.D. 1988); *State v. Goodroad*, 442 N.W.2d 246 (S.D.1989). The court entered a ruling on the motion which allowed Anita to testify as to Witchey's modus operandi in cruising bars to look for and follow women. Defense counsel made the proper motion and the proper order was entered. His performance was not deficient in any manner.

## IV.

■ The next claim is that defense counsel failed to object to the prosecution's

offer into evidence of the written statement that Anita gave to law enforcement. The statement was basically duplicative of her testimony. Witchey contends that the statement was cumulative, hearsay, and unfairly highlighted the testimony because it gave the jury the opportunity to review it in the jury room.

The contention ignores the order of events leading to the admission of the statement. Early in the trial the prosecution attempted to offer the statement through detective Spitzer; the offer was properly objected to by defense counsel as hearsay, and was sustained by the trial judge. Anita later testified, and on cross-examination Rice pointed out that in her statement she alleged that rape occurred in October of 1978, when on direct examination she stated that the time of the incident was October of 1979. The prosecution thereafter recalled detective Spitzer in an attempt to explain the inconsistency and reoffered the statement at the close of the testimony. Rice did not object to the offer.

The statement was used by Rice as a prior inconsistent statement to impeach the credibility of the witness. Its admission into evidence was arguably beneficial to Witchey rather than detrimental because it served to highlight the inconsistency.

In light of all of the circumstances surrounding the admission of the statement into evidence and evaluating the state of the evidence at the time of the alleged error from defense counsel's perspective, we conclude that his performance was not deficient under the *Strickland–Luna* standards.

### V.

Witchey's last claim is that defense counsel failed to perfect an appeal of the judgment of conviction after being asked to do so.

■ Regarding this contention, if defense counsel's performance was deficient, then prejudice is presumed because of a complete failure to perform a required duty. *Loop v. Solem*, 398 N.W.2d 140 (S.D.1986); *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

■ We hold that there was no deficiency in the post trial conduct of defense counsel. The key issue of the admissibility of Anita's testimony had already been resolved by intermediate appeal. Witchey was informed by both court and counsel of his right to appeal and the appropriate time limitation. Rice's recommendation to forego appeal was reasonable under the circumstances; another trial, in the face of the strong evidence, would have likely had the same result. Witchey's appeal rights were twice addressed in written correspondence from Rice shortly after the conviction. He was notified of Rice's petition to withdraw and failed to object in any manner. He has failed to show that his alleged letter to Rice advising of his desire to appeal was in fact ever written. He had ample time after the withdrawal of defense counsel to seek another attorney to perfect an appeal.

■ Constitutional rights, including those in the Bill of Rights, may be waived if the waiver is made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Jones v. State*, 353 N.W.2d 781, 783 (S.D.1984). In this case, we conclude that Witchey voluntarily and knowingly acquiesced in Rice's withdrawal and was fully aware of his appeal rights. Therefore, he cannot now complain of a failure by counsel to perfect an appeal.

We affirm the holding of the circuit court on all issues.

MILLER, C.J., and HENDERSON and SABERS, JJ., concur.

AMUNDSON, Justice, concurs in part and concurs in result in part.

STEELE, Circuit Judge, for WUEST, J., disqualified.

AMUNDSON, Justice (concurring in part and concurring in result in part).

I agree with the majority's holding on Issues I, II, III and IV.

The last issue raises a contention that Attorney Rice rendered ineffective assistance of counsel by failing to perfect an appeal from the judgment of conviction. This court addressed a similar contention in *Loop v. Solem*, 398 N.W.2d 140 (S.D.1986), and quoted extensively from the United States Supreme Court decision of *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), *reh'g denied* 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377. The *Anders* court held that an attorney who finds an appeal frivolous after undertaking or being appointed to represent a convicted felon should advise the court of same and move to withdraw. Further, such a motion "must be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses." 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498.

In this case, it is not clear whether or not Attorney Rice was retained or appointed counsel, but there is no question that Attorney Rice was still attorney of record for the appeal, otherwise there would have been no need for filing of a motion to withdraw. The defendant did not appear at the hearing on the motion and whether or not he filed anything with the court or Attorney Rice in resistance to same is somewhat nebulous from this record. (It should come as no surprise that defendant did not personally appear since, at the time of the hearing, he was incarcerated in the South Dakota State Penitentiary in Sioux Falls, South Dakota, some 250 miles from Aberdeen, South Dakota, and it is fair to assume, generally, that a person who has been so incarcerated loses a certain degree of freedom of movement.)

The Rice motion filed with the court states that the principal issue which could have been raised on a direct appeal had already been decided by this court on an intermediate appeal and, having discussed all aspects of an appeal with defendant which included the status of the law and risks involved, that the best interest of defendant would be served by not perfecting an appeal. The motion further states that defendant concurred with counsel. Also, attached to the motion was a letter which counsel sent to defendant at the penitentiary. No brief or other data was submitted to the trial court which set forth any information regarding the first four issues addressed in this appeal and why they were deemed meritless or frivolous by counsel.

Attorney Rice, while being examined at the habeas hearing, testified that he filed the motion to withdraw because of his experience in the Eighth Circuit Court of Appeals. Hence, he was extremely conversant with the absolute right of appeal that a convicted felon possesses but responded that he was not familiar with the *Loop* decision handed down by this court about one month before the motion to withdraw was heard in this case.

This court further stated in *Loop:*

> The procedure outlined in *Anders* comports with our Code of Professional Responsibility. DR 2–110(A)(2) states: "A lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client." That section further requires that a lawyer give notice to his client that will allow time for employment of other counsel. In any future cases involving similar questions of compliance with DR 2–110(A)(2), we suggest that the issue of the reasonableness of counsel's steps should be viewed in accordance with our directions as adopted from *Anders.*

398 N.W.2d at 143. The handling of the motion to withdraw in this case falls far short of our directions.

The United States Supreme Court again addressed this withdrawal of counsel issue in *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), where appellate counsel had filed a motion to withdraw, which stated:

"MOTION

Appellant's attorney respectfully requests a Journal Entry permitting him to withdraw as appellant's appellate attorney of record in this appeal thereby relieving appellant's attorney of any further responsibility to prosecute this appeal with the attorney/client relationship terminated effective on the date file-stamped on this Motion."

488 U.S. at 78, 109 S.Ct. at 348–49. The motion to withdraw was granted and the case came before the Supreme Court on a grant of certiorari after his appeal had been dismissed in state court. The Supreme Court in discussing the right to counsel on appeal stated:

Approximately a quarter of a century ago, in *Douglas v. California,* 372 US 353, [9 L.Ed.2d 811, 83 S.Ct. 814] (1963), this Court recognized that the Fourteenth Amendment guarantees a criminal appellant the right to counsel on a first appeal as of right. We held that a procedure in which appellate courts review the record and "appoint counsel if in their opinion" the assistance of counsel "would be helpful to the defendant or the court," id., at 355, [9 L.Ed.2d 811, 83 S.Ct. 814,] is an inadequate substitute for guaranteed representation. Four years later, in *Anders v. California,* 386 US 738, [18 L.Ed.2d 493, 87 S.Ct. 1396] (1967), we held that a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal.

The Anders opinion did, however, recognize that in some circumstances counsel may withdraw without denying the indigent appellant fair representation provided that certain safeguards are observed. Appointed counsel is first required to conduct "a conscientious examination" of the case. *Id.,* at 744, [18 L.Ed.2d 493, 87 S.Ct. 1396]. If he or she is then of the opinion that the case is wholly frivolous, counsel may request leave to withdraw. The request "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Ibid.* Once the appellate court receives this brief, it must then itself conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous." *Ibid.* Only after this separate inquiry, and only after the appellate court finds no nonfrivolous issue for appeal, may the court proceed to consider the appeal on the merits without the assistance of counsel. On the other hand, if the court disagrees with counsel—as the Ohio Court of Appeals did in this case—and concludes that there are nonfrivolous issues for appeal, "it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Ibid.*

488 U.S. at 79–80, 109 S.Ct. at 349–50 (footnote omitted).

The casual procedure for withdrawal employed in this case certainly did not comport with this court's previous directives. While the time for appeal was running, counsel for defendant moved to terminate the attorney/client relationship. The motion was totally inadequate under *Anders* and *Loop.* There was no signed waiver by defendant of his right to appeal nor even an acknowledgment that defendant had received the attorney's correspondence and concurred in the recommendations. I cannot, in good conscience, place a stamp of approval on the withdrawal procedure implemented in this case since it certainly impacted the defendant's absolute right to appeal. Further, the record is devoid of any consideration being given regarding potential prejudice to defendant's absolute right to appeal, such as appointment of other counsel to assist in the appeal. This court cannot stress the importance of attorneys following the directions handed down by this court in circumstances where a defendant's time for appeal is running after conviction and his attorney wants to abandon the ship.

In *Loop,* this court remanded the matter for resentencing so as to reinstate the appeal period. I do not deem that necessary

in this case, since defendant has now had an opportunity to argue the grounds for appeal in this case in conjunction with his ineffective assistance of counsel claim, and it is evident that he would not have prevailed on those claimed errors on a direct appeal, and concur in the result on the last issue.